John A. SPAEDER, Esq. and Robert Francis Bixby, Co-Executors of the Estate of Leo V. Stoeltzlen, Deceased,

v.

UNITED STATES of America.

Civ. A. No. 76–64 Erie.

United States District Court,
W. D. Pennsylvania.

Oct. 28, 1978.

James E. Marsh, Donald J. Rogala, John M. Quinn, John G. Gent, Walter A. Dart, Jr., Erie, Pa., for plaintiffs.

J. Brian Ferrel, Tax Div., Dept. of Justice, Washington, D. C., for defendant.

## MEMORANDUM OPINION

KNOX, District Judge.

Plaintiffs, John A. Spaeder, Esq., and Robert Francis Bixby, bring this action as co-executors of the Estate of Leo V. Stoeltzlen (decedent) seeking a refund of $75,-583.23 in federal estate tax and interest. The Court has jurisdiction of the action pursuant to Title 28 U.S.C. § 1346(a)(1). Plaintiffs base their claim for refund on two grounds: (1) that the estate was improperly denied a charitable deduction pursuant to § 2055 of the I.R.S. Code of 1954 (IRC) Title 26 U.S.C. § 2055 for bequests in the will to qualifying charities and (2) that the value of cash gifts to Robert and Barbara Bixby and/or the value of certain real estate in Erie, Pa. were improperly included in the gross estate.

On August 30, 1977 the United States moved for summary judgment pursuant to F.R.C.P. 56(b); on September 30, 1977 the plaintiffs moved for partial summary judgment under Rule 56(a). The defendant contends that the estate is not entitled to a charitable deduction because nothing has been paid to the charitable beneficiaries of the estate. Defendant further argues that paragraph 45 of decedent's will clearly provides that charitable bequests must abate where as here the assets of the estate are insufficient to pay all debts, expenses, taxes and bequests to individual and charitable beneficiaries in full. Thus, there will be no funds qualifying for the charitable deduction under § 2055.

Second, defendant argues that the full market value of the real estate in Erie, Pa. must be included in the gross estate pursuant to § 2040, as decedent provided the entire consideration for purchase and construction of the premises.

In their motion, plaintiffs maintain that the will is ambiguous with respect to payment of taxes and that under applicable state law, all estate taxes are to be apportioned equitably among individual and charitable beneficiaries. Plaintiffs contend that under the Pennsylvania Estate Tax Apportionment Act, 20 P.S. § 3701 et seq., the burden of the federal estate tax is to be borne by the bequests to the individual beneficiaries, leaving $158,877.91 for the charitable bequests, which qualifies for the charitable deduction pursuant to § 2055.

These motions raise four issues for consideration by the Court:

(1) whether decedent's transfer of cash gifts to Robert and Barbara Bixby, made within three years of his death, are includable in the gross estate as gifts made in contemplation of death.

(2) whether the value of certain real estate passing to the Bixbys under the joint tenancy provisions is taxable in full to the estate.

(3) whether plaintiffs fairly raised the question of the valuation of this real estate in their claim for refund.

(4) whether the estate is entitled to a charitable deduction pursuant to § 2055 for bequests to qualifying charitable beneficiaries.

The Court heard oral argument on the motions on November 3, 1977 and has received extensive briefs from the parties. In addition, the Court has received briefs on behalf of the individual and charitable beneficiaries with respect to the charitable deduction issue.

After careful consideration of the briefs and arguments of counsel, the Court determines that defendant's motion must be granted, except with regard to the question of gifts allegedly made in contemplation of death. Accordingly, plaintiffs' motion for partial summary judgment will be denied.

I

The facts thus far developed by the parties can be summarized as follows: Leo V. Stoeltzlen, the decedent in this case, died on October 23, 1972 at the age of 85. Mr. Stoeltzlen was a retired engineer who had never been married and had no children. Prior to 1971, he lived alone in a second floor apartment at 12th and State Streets in the City of Erie, Pa.

In January of 1971, decedent suffered a broken hip and his condition left him unable to climb the stairway to and from his apartment. As a result, he proposed to his long time friends, Robert and Barbara Bixby, that he furnish them with funds for the construction of a new home in which he would be permitted to occupy an apartment. Between August and December of 1971 decedent transferred approximately $102,716.00 [1] to the Bixbys. He filed a Federal Gift Tax Return for the final quarter of 1971 which reflected this amount. With these funds, the Bixbys acquired the property at 4110 Venice Dr., Erie, Pa. which

they held with decedent as joint tenants with right of survivorship.

Following his accident, decedent was confined from February 19, 1971 until late February 1972 at either the Hamot Medical Center (Hamot) or the Western Reserve Convalescent Home (Home). In addition, he received in-patient radiation therapy at Hamot between September 8, 1971 and October 22, 1971 for cancer of the larynx. Finally, in late February, 1972, decedent was discharged from the Home to the Bixbys new residence at 4110 Venice Dr., Erie, Pa., where he remained until October 2, 1972. He suffered a stroke and died at the Home on October 23, 1972.

Decedent at various times prepared three wills, the last of which was admitted to probate in November of 1972. The original will, executed on February 28, 1959, provided for specific bequests to individuals and charities and directed that the residue of decedent's estate be paid to his brother, a Florida resident, in quarterly installments. This will directed that all inheritance, estate and succession taxes be paid from the principal of the residuary estate. No provision, *however, was made* for the possibility that the residuary estate might be insufficient to pay taxes.

The second will, dated April 2, 1965, also contained bequests to charities and individuals, but provided for specific cash amounts rather than percentage gifts. Decedent again directed that all estate and inheritance taxes be paid from the residuary estate.

Decedent's last will, dated April 2, 1965, contained the following pertinent directions:

Paragraphs 1 through 3 related to the payment of debts and funeral expenses and provided for funeral arrangements. Paragraphs 4 through 28 contained charitable bequests totalling $180,500.00. Paragraphs 29 through 32 established four trusts for

---

1. The exact amount of money given to the Bixbys in late 1971 and early 1972 is a matter of dispute between the parties, and will be left for determination at trial.

the children of decedent's friends.[2] Paragraphs 33 through 40 bequeathed a total of $198,000.00 to various individuals, including the Bixbys. In Paragraph 42, decedent directed that "all estate, inheritance and succession taxes" on property passing under or outside the will "shall be paid out of the principal of my residuary estate as if said taxes were expenses of administration" and all property passing by reason of his death or under the last will was to be free and clear of said taxes. Paragraph 44 provides that the residue of the estate, after the payment of debts, funeral expenses, administration expenses, and " . . . all taxes such as succession and Federal Estate taxes . . . ." was to go to Mrs. Claire Martin Schrader, David and Edith Martin, and the Bixbys.

In Paragraph 45, a critical provision in this litigation, decedent directed as follows:

It being my express will and intention, I accordingly order and direct that in the event that the assets of my estate at the time of my death, after deducting therefrom my just debts, funeral expenses, the expenses for the administration of my estate and the payment of Inheritance and Succession, as well as Estate Taxes, that may be assessable against the same, should prove insufficient to pay all of the many aforementioned legacies and bequests in full, then, and in such event, I order and direct that the bequests made to the named individuals or persons shall be paid in full and the bequests to charitable, religious or educational institutions shall abate and prorate and share out of the then balance in ratio and their respective bequested amounts bear to said total residual balance.

Finally, plaintiffs, John A. Spaeder and Robert F. Bixby, were appointed executors.

On July 19, 1973 plaintiffs filed a federal estate tax return claiming the following valuations:

| | | |
|---|---|---|
| (1) | Total Gross Estate | $492,325.13 |
| (2) | Deduction-Debts, Funeral Expenses | 52,447.22 |
| (3) | Adjusted Gross Estate (1) – (2) | 439,877.91 |
| (4) | Deduction-Charitable Bequests | 175,500.00 |
| (5) | Total Deductions (2) + (4) | 227,947.22 |
| (6) | Exemption | 60,000.00 |
| (7) | Taxable Estate | 204,377.91 |
| (8) | Net Federal Estate Tax Due | 49,268.30 |

Of the $492,325.13 which plaintiffs reported as the gross estate, $469,325.13 constituted probate assets. The balance of $23,000.00 represented plaintiffs' valuation of decedent's interest as joint tenant with right of survivorship in the premises at 4110 Venice Dr., Erie, Pa.

Upon audit of the return, the Internal Revenue Service, disallowed the charitable deduction claimed by plaintiffs and included the sum of $102,716.00 in the gross estate. Thus, on May 30, 1975, the IRS assessed an estate tax deficiency against the estate of $68,022.49, together with interest of $7,560.74, which was paid in full June 13, 1975. On August 28, 1975, plaintiffs filed a timely claim for refund (Exhibit B of the complaint) with the IRS, asserting the grounds for refund noted above, and claiming an additional deduction for attorneys fees incurred in connection with the refund claim. On May 13, 1976 plaintiffs filed this action for refund in this court.

## II

### A. Gifts in Contemplation of Death

Upon audit of the estate tax return, the District Director of the IRS determined that the $102,716.00 transferred by decedent to the Bixbys in late 1971 was includible in the gross estate as a gift made "in contemplation of death." 26 U.S.C. § 2035. Whether decedent actually made these transfers in contemplation of death is the question now before the court.

In its motion for summary judgment, defendant contends that the District Director's determination to include the funds was correct. Defendant notes that all gifts of property made by a decedent within three years of his death are presumed to have been made in contemplation of death.

2. Paragraphs 29 and 30 established trusts for the support of Deborah Claire Bixby and Robert Andrew Bixby, children of Barbara and Robert Francis Bixby. Paragraphs 31 and 32 established similar trusts for Karen Ann Martin and Heidi Claire Martin, respectively, children of Edith and David Thompson Martin.

26 U.S.C. § 2035(b). In this case, decedent made the transfers in question during the summer and fall of 1971, well within three years of the date of death, October 23, 1972. Defendant also cites various factors tending to support the presumption in this case: (1) decedent was 84 years old at the time of the transfers in late 1971 (2) decedent was in poor health in 1971: he had suffered a hip fracture in January 1971, he had a history of vascular arteriosclerosis, and he had received treatment for cancer of the tongue in September 1971 (3) the Bixbys were beneficiaries under the will and the objects of his affection (4) the gifts were sizable—constituting about 20% of his estate. Plaintiffs, on the other hand, argue that the issue must be determined by a jury after introduction of all the evidence at trial. The Court concludes that plaintiffs' position is well taken and that summary judgment is inappropriate at this time.

26 U.S.C. § 2035, governing transfers made in contemplation of death, provides as follows:

"(a) General rule.—

"The value of the gross estate shall include the value all property to the extent of any interest therein of which the decedent has at any time made a transfer (except in case of a bona fide sale for an adequate and full consideration in money or money's worth), by trust or otherwise, in contemplation of his death.

"(b) Application of general rule.—

"If the decedent within a period of 3 years ending with the date of his death (except in case of a bona fide sale for an adequate and full consideration in money or money's worth) transferred an interest in property, relinquished a power, or exercised or released a general power of appointment, such transfer, relinquishment, exercise, or release shall, unless shown to the contrary, be deemed to have been made in contemplation of death within the meaning of this section and sections 2038 and 2041 (relating to revocable transfers and powers of appointment); but no such transfer, relinquishment, exercise, or release made before

such 3-year period shall be treated as having been made in contemplation of death."

Further, Regulation § 20.2035–1(c) provides:

(c) Definition. The phrase "in contemplation of death", as used in this section, does not have reference to that general expectation of death such as all persons entertain. On the other hand, its meaning is not restricted to an apprehension that death is imminent or near. A transfer "in contemplation of death" is a disposition of property prompted by the thought of death (although it need not be solely so prompted). A transfer is prompted by the thought of death if (1) made with the purpose of avoiding death taxes, (2) made as a substitute for a testamentary disposition of the property, or (3) made for any other motive associated with death. The bodily and mental condition of the decedent and all other attendant facts and circumstances are to be scrutinized in order to determine whether or not such thought prompted the disposition.

The leading Supreme Court decision interpreting the meaning of the phrase "in contemplation of death" is *United States v. Wells,* 283 U.S. 102, 51 S.Ct. 446, 75 L.Ed. 867 (1931). In *Wells,* the Court discussed the applicable test in determining a donor's motive in making gifts before death.

As the test, despite varying circumstances, is always to be found in motive, it cannot be said that the determinative motive is lacking merely because of the absence of a consciousness that death is imminent. It is contemplation of death, not necessarily contemplation of imminent death, to which the statute refers. It is conceivable that the idea of death may possess the mind so as to furnish a controlling motive for the disposition of property, although death is not thought to be close at hand. Old age [118] may give premonitions and promptings independent of mortal disease. Yet age in itself cannot be regarded as furnishing a decisive test, for sound health and pur-

poses associated with life, rather than with death, may motivate the transfer. The words "in contemplation of death" mean that the thought of death is the impelling cause of the transfer, and while the belief in the imminence of death may afford convincing evidence, the statute is not to be limited, and its purpose thwarted, by a rule of construction which in place of contemplation of death makes the final criterion to be an apprehension that death is "near at hand."

Thus, the Court indicates that the question of motive is one of fact to be determined from all the facts and circumstances bearing upon the decedent's state of mind at the time the transfers are made.

■ Based upon the evidence produced to date, the Court cannot say that defendant has proven beyond all doubt that decedent transferred the $102,716.00 to the Bixbys in contemplation of death. In this case, plaintiffs have the burden of proving a "life motive" for the gifts, *Allen v. Trust Co.,* 326 U.S. 630, 66 S.Ct. 389, 90 L.Ed. 367 (1946), and they are entitled to produce evidence at trial that the transfers were not made as a means of avoiding the federal estate tax. The Court is mindful of the Third Circuit's admonition that "summary judgment may not be granted where there is the slightest doubt as to the facts". *Tomalewski v. State Farm Life Insurance Co.,* 494 F.2d 882, 884 (3d Cir. 1974). Given that a genuine issue of material facts remains here, the Court will deny defendant's motion as to this issue.

B.   Includibility of Real Estate

At the time of his death, decedent held an undivided one-half interest in the premises at 4110 Venice Drive, Erie, Pa. in joint tenancy with the Bixbys with right of survivorship (Defendant's Exhibit F). The IRS included the entire fair market value of this real estate in the decedent's gross estate, pursuant to 26 U.S.C. § 2040. This adjustment increased the value of the gross

estate from $492,325.00 to $572,041.00.[3] 26 U.S.C. § 2040, governing the taxability of joint interests, provides in pertinent part:

The value of the gross estate shall include the value of all property to the extent of the interest therein held as joint tenants by the decedent and any other person, or as tenants by the entirety by the decedent and spouse, or deposited, with any person carrying on the banking business, in their joint names and payable to either or the survivor, except such part thereof as may be shown to have originally belonged to such other person and never to have been received or acquired by the latter from the decedent for less than an adequate and full consideration in money or money's worth: Provided, That where such property or any part thereof, or part of the consideration with which such property was acquired, is shown to have been at any time acquired by such other person from the decedent for less than an adequate and full consideration in money or money's worth, there shall be excepted only such part of the value of such property as is proportionate to the consideration furnished by such other person.

Thus, under § 2040 the entire value of property held jointly be the decedent and other persons is included in decedent's gross estate except such part of the entire value as is attributable to the amount of consideration in money or money's worth furnished by the other joint owners. In this regard, Treasury Regulation 20.2040–1(a) provides:

A decedent's gross estate includes under section 2040 the value of property held jointly at the time of the decedent's death by the decedent and another person or persons with right to survivorship, as follows:

(1) To the extent that the property was acquired by the decedent and the other joint owner or owners by gift, devise, bequest, or inheritance, the decedent's fractional share of the property is included.

---

3.   The plaintiffs included decedent's one-half interest in the real estate at $23,000, or one-half of the value for local tax purposes of $46,000.

The Service, upon audit, included the "real estate at its fair market value", based upon the gift tax return, at $102,716.

'(2) In all other cases, the entire value of the property is included except such part of the entire value as is attributable to the amount of the consideration in money or money's worth furnished by the other joint owner or owners. See § 20.-2043–1 with respect to adequacy of consideration. Such part of the entire value is that portion of the entire value of the property at the decedent's death (or at the alternate valuation date described in section 2032) which the consideration in money or money's worth furnished by the other joint owner or owners bears to the total cost of acquisition and capital additions. *In determining the consideration furnished by the other joint owner or owners, there is taken into account only that portion of such consideration which is shown not to be attributable to money or other property acquired by the other joint owner or owners from the decedent for less than a full and adequate consideration in money or money's worth.*

The entire value of jointly held property is included in a decedent's gross estate unless the executor submits facts sufficient to show that property was not acquired entirely with consideration furnished by the decedent, or was acquired by the decedent and the other joint owner or owners by gift, bequest, devise, or inheritance. (emphasis added)

The government contends that decedent furnished the entire consideration for the purchase and construction of the real estate in issue, and therefore that the entire value of the premises was properly included in decedent's gross estate. Plaintiffs allege that the funds used to construct the home came from the Bixbys personal bank account, or, alternatively that the Bixbys provided consideration for the home in the form of care, comfort and support for decedent.

■■■ The court finds that the evidence clearly establishes that decedent provided the entire consideration for the lots and for the construction of the house. In his deposition, plaintiff Bixby testified that all of the funds were provided by decedent. (Bixby deposition, 24–26). Bixby testified that

decedent gave him $102,000.00 between August and October of 1971 and that these monies were deposited in plaintiff's checking account. (Dep. 25–26) In addition, decedent specifically provided the $7500 for the purchase of the lots at 4110 Venice Drive in September 1971. Thus, as Treasury Regulation 20.2040–1(c)(4) indicates, it is immaterial that plaintiff may have made the final payments from his own checking account:

(c) Examples. The application of this section may be explained in the following examples in each of which it is assumed that the other joint owner or owners survived the decedent:

(4) If the decedent, before the acquisition of the property by himself and the other joint owner, gave the latter a sum of money or other property which thereafter became the other joint owner's entire contribution to the purchase price, then the value of the entire property is so included, notwithstanding the fact that the other property may have appreciated in value due to market conditions between the time of the gift and the time of the acquisition of the jointly held property.

Similarly, the Court notes that care, comfort, and support to decedent cannot constitute consideration furnished for the acquisition of the real estate. The regulation requires that the consideration be adequate and full in *money or money's worth* (emphasis added). Cf. Lowndes & Kramer, Federal Estate & Gift Taxes (3d ed.), §§ 14.1, 14.3, 14.4; *Jesse Ring Garrett v. Commissioner,* 22P–H Tax Ct.Mem. 53, 328 (1953). Accordingly, under the terms of § 2040 and the applicable regulations, defendant is entitled to summary judgment on this issue and the real estate is included in the gross estate at its fair market value.

C. Valuation of the Real Estate

■■■ The third issue raised by these motions concerns the Internal Revenue Service's valuation of the real estate in question at $102,716. Initially, the court notes that the value of property includible in the

**80**

gross estate is the fair market value of such property on the date of decedent's death. In this regard, Treasury Regulation § 20.-2031.1(b) provides in pertinent part:

"(b) Valuation of property in general. The value of every item of property includible in a decedent's gross estate under sections 2031 and 2044 is its fair market value at the time of the decedent's death, except that if the executor elects the alternative valuation method under section 2032, it is the fair market value thereof at the date, and with the adjustments, prescribed in that section. The fair market value is the price at which the property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or to sell and both having reasonable knowledge of relevant facts.

Thus, it is clear that the property at 4110 Venice Drive is includible in decedent's gross estate at its fair market value on October 23, 1972, the date of death in this case.

In this instance, the Internal Revenue Service included the property at a "fair market value" of $102,716 reflecting the amount of gifts given by decedent to the Bixbys in 1971, and applied by them to the purchase and construction of the property. Plaintiffs assert that this valuation is clearly erroneous given that the Bixbys paid less than $90,000 for the construction of the premises within one year of decedent's death. Specifically, plaintiffs note that actual construction costs amount to $74,-355.11, which, coupled with a purchase price of $7500 for the lots, amounts to a total expenditure for the home of $81,855.11. Thus, plaintiffs argue that the value of the home could not have appreciated by more than $20,000 to $102,716 within the space of one year.

■ The government contends that this valuation adequately reflects the fair market value of the property; further, it alleges that plaintiffs are precluded from raising the valuation issue by their failure to specify this ground in their claim for refund. The court concludes that plaintiff's refund claim does not raise the valuation question and we therefore hold that the Internal Revenue Service's valuation of the real estate must control here.

■ 26 U.S.C. § 7422(a), governing suits for refund of taxes, provides that a proper claim for refund is a jurisdictional prerequisite to a refund action in this court:

"(a) No suit prior to filing claim for refund.—

No suit or proceeding shall be maintained in any court for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected, or of any penalty claimed to have been collected without authority, or of any sum alleged to have been excessive or in any manner wrongfully collected, until a claim for refund or credit has been duly filed with the Secretary or his delegate, according to the provisions of law in that regard, and the regulations of the Secretary or his delegate established in pursuant thereof."

Treasury Regulation 301.6402–2(b) further requires that the plaintiff specifically set forth each ground for recovery in his refund claim:

"(b) Grounds set forth in claim.

(1) No refund or credit will be allowed after the expiration of the statutory period of limitation applicable to the filing of a claim therefor except upon one or more of the grounds set forth in a claim filed before the expiration of such period. The claim must set forth in detail each ground upon which a credit or refund is claimed and facts sufficient to apprise the commissioner of the exact basis thereof. The statement of the grounds and facts must be verified by a written declaration that it is made under the penalties of perjury. A claim which does not comply with this paragraph will not be considered for any purpose as a claim for refund or credit."

The law is well settled that a plaintiff in a tax refund suit may only recover upon the grounds specifically set forth in the refund claim. The purpose of this requirement is two-fold: (1) to guarantee that the govern-

ment will have adequate notice of all claims and (2) to allow the government an opportunity to attempt settlement of certain claims without proceeding to litigation. *U. S. v. Felt & Tarrant Mfg.*, 283 U.S. 269, 51 S.Ct. 376, 75 L.Ed. 1025 (1931), *Austin v. U. S.*, 461 F.2d 733 (10th Cir. 1972).

Thus, the court must determine whether this claim gives the government adequate notice of plaintiff's intent to contest this issue. The relevant portion of plaintiffs' refund claim reads as follows:

"The estate of Leo V. Stoelzlen should not have been required to include gifts on which gift tax therefor was paid and gift tax return filed during the life of doner and when said gifts were not made in contemplation of death."

Plaintiffs allege in their brief this claim impliedly raises the issue of the government's valuation of the property's "fair market value" is in error. In *Estate of Bird*, 534 F.2d 1214 (6th Cir. 1976), the plaintiff estate filed a claim for refund contending that the funds it received from a contingent interest in another trust was not taxable income. On appeal from a decision in favor of the Internal Revenue Service, the estate challenged the government's method of valuing the estate's basis in the trust. The Sixth Circuit held the claim barred because the refund claim made no allegation that the valuation method was improper. Similarly, in this case, we find that the refund claim fails to specify any objection to the Service's valuation of the property in issue here.

The court holds, therefore, that the real estate must be included in the estate at the value of $102,716, the "fair market value" in this case, as determined by the Internal Revenue Service.

## D. Charitable Deduction

Finally, the court turns to the fourth and most crucial issue in the case, which involves an interpretation of decedent's intent in paragraph 45 of the will. The question presented is whether the estate is entitled to a charitable deduction under § 2055, and specifically, whether the individual or charitable (I.R.C.) beneficiaries of the estate are to bear the burden of the federal estate tax in this case. The court holds that paragraph 45 of the will clearly directs that the individual beneficiaries are to be paid in full without reduction for estate taxes, and therefore that the charities must abate to the extent required to pay said taxes.

In paragraph 42 of his will, decedent directs that all estate taxes shall be paid out of the principal of the residuary estate as expenses of administration. The residuary estate, of course, is that portion of the estate remaining after payment of all obligations and specific bequests. 96 C.J.S. Wills § 705 p. 75. Decedent further specifies that all legacies, devises and other gifts under the will are to be free and clear of taxes.

Paragraph 44 of the will provides for distribution of the residuary estate as well as payment of all inheritance and estate taxes.

In paragraph 45, decedent provides for the possibility that the assets of the estate might be insufficient to satisfy all obligations and bequests in full:

"It being my express will and intention, I accordingly order and direct that in the event that the assets of my estate at the time of my death, after deducting therefrom my just debts, funeral expenses, the expenses for the administration of my estate and the payment of Inheritance and Succession, as well as Estate Taxes, that may be assessable against the same, should prove insufficient to pay all of the many aforementioned legacies and bequests in full, then, and in such event, I order and direct that the bequests made to the named individuals or persons shall be paid in full and that the bequests to charitable, religious or educational institutions shall abate and prorate and share out of the then balance in the ratio that their respective bequeathed amounts bear to said total residual balance."

In this case, the assets of the estate are insufficient to pay all debts, expenses, taxes and bequests in full. After deduction for

debts, expenses and property passing outside the will, $416,877.91 remains for payment of taxes and distribution to the beneficiaries. The specific bequests to individuals and charities amount to $433,500. Thus, the specific bequests to either the individual or the charitable beneficiaries must be reduced by an amount sufficient to pay the federal estate tax.

The Internal Revenue Service in its audit denied the estate's claim for a charitable deduction of $175,500 on the basis of paragraph 45 and 26 U.S.C. § 2055(c). First, the IRS contends that paragraph 45 clearly requires the charities to bear the burden of taxes in this case where no residuary estate exists. Second, having allocated the burden of estate taxes to the charities, the IRS contends that the claimed deduction must be reduced by the amount of taxes payable from the charitable bequests.[4] Plaintiffs argue that paragraph 45 is ambiguous with regard to taxes, and that state law therefore allocates the burden of taxes to the individual beneficiaries.

■ Initially, the court notes that it is state law which determines which beneficiaries are responsible for the payment of the federal estate tax. In the case of *Riggs v. Del Drago,* 317 U.S. 95, 63 S.Ct. 109, 86 L.Ed. 106 (1942), the U. S. Supreme Court states:

"We are of opinion that Congress intended that the federal estate tax should be paid out of the estate as a whole and that the applicable state law as to the devolution of property at death should govern the distribution of the remainder and the ultimate impact of the federal tax.

In this instance, the applicable state law is the Pennsylvania Estate Tax Apportionment Act, 20 P.S. 3701 et seq., which provides for the allocation of estate taxes. Generally, the Act provides for an equitable apportionment of taxes, directing that those bequests that contribute to the taxable estate must bear their proportionate share of the tax burden, 20 P.S. 3704(a) provides as follows:

Basis of apportionment.—Apportionment of the estate tax, except as provided in Section 3703 of this code (relating to general rules), shall be made among the persons interested in property includible in gross estates in the proportion that the value of the interest of each person bears to the value of the net estate before exemption. The values used in determining the amount of tax liability shall be used for this purpose.

In addition, 3704(b)(1) provides:

Deductions allowed by Federal revenue laws in determining the value of decedent's net estate. Any interest for which deduction is allowable under Federal revenue laws in determining the value of decedent's net estate, such as property passing to or in trust for a surviving spouse and charitable, public, or similar gifts or bequests to the extent of the allowed deduction, shall not be included in the computation provided in subsection (a) of this section, and to that extent no apportionment shall be made against such interest, except that when such interest is subject to a prior present interest which is not allowable as a deduction, the estate tax apportionable against the present interest shall be paid from principal.

Thus, under § 3704(b)(1), the Act would provide that no apportionment of taxes be made against the charitable bequests, as they qualify for a deduction under § 2055 of the Code. The Act in § 3703(a), however, does state that where a testator clearly provides for the allocation of taxes that provision will control over the presumption of the Act. Thus, the question becomes whether decedent has made such a clear and unambiguous direction in paragraph 45 of the will.

■ The court finds that decedent has made a definite allocation of the burden of taxes to the charities and that the presumption of the Act does not apply.

---

4. Generally, 26 U.S.C. § 2055 provides that an estate is entitled to a charitable deduction for gifts made to qualifying charities. § 2055(c) qualifies this rule by stating that where estate taxes are payable in whole or in part out of bequests otherwise deductible, then the allowable deduction shall be reduced by the amount of the taxes. 26 U.S.C. § 2055(c).

Paragraph 45 is, in effect, a "back-up" "pay tax" clause intended to apply in the situation now before the court. Here, the assets of the estate are insufficient to satisfy all bequests "in full" after payment of all debts, expenses, estate and inheritance taxes. Under these circumstances, decedent specifically directs that the bequests to the named individuals are to be paid in full and the charitable bequests are to abate.

Further, the court finds that the words "pay . . . in full" mean payment of the bequests in the specified amounts without reduction for estate taxes. Decedent's intent in paragraph 45 was to insure that the individual bequests be paid in the specified amounts where the estate's assets could not fund the residuary estate.

Plaintiffs and the charities rely upon several cases which uphold the presumption that a testator intends that all taxes be apportioned in accordance with the provisions of the Act. In re Hoffman's Estate, 399 Pa. 96, 160 A.2d 237 (1960) involved a direction in decedent's will that "any and all" inheritance taxes be paid out of the residuary estate in that case. The Pennsylvania Supreme Court held that this language which did not clearly and specifically allocate the payment of the federal estate tax, did not overcome the presumption of the Act in favor of apportionment of the estate tax. In re Estate of Erieg, 439 Pa. 550, 267 A.2d 841 (1970), the court again emphasized the strong presumption in favor of apportionment of taxes in accordance with the Act.

Plaintiffs also rely heavily upon In re Wahr's Estate, 370 Pa. 382, 88 A.2d 417 (1952). In Wahr's Estate, decedent divided the residue of his estate into twelve "equal" shares, and gave six of the shares to named charities. The court held that this provision was not a direction against appointment and that an equal division of assets was not equivalent to an equal division of the tax burden. Similarly, in the case at bar, plaintiffs allege that payment to the named individuals "in full" in the division of the assets does not exempt the individuals from payment of taxes.

These cases are not controlling here, however, where the court finds that the direction as to payment of taxes is clear. The case of In re Thaw's Estate, 414 Pa. 347, 200 A.2d 290 (1964), cited by defendant, is most nearly applicable. In Thaw's Estate, the testatrix established a general residuary estate with 28 specific bequests, and a bequest of the balance of any remaining assets to the University of Pittsburgh. She further provided that all taxes with respect to any legacy in the will were to be paid from the residue of her estate. The court held that these provisions expressed a clear intent that the 28 bequests were to be tax free and that the "residue" available to the university was to bear the impact of taxes. Similarly, in this case, decedent indicates in paragraph 42 that all bequests are to be tax free, and then in paragraph 45 directs that the charities are to bear the burden of taxes.

Thus, for the reasons stated above, the court holds that the Internal Revenue Service's allocation of the taxes in this case was correct and that the claimed charitable deduction was properly denied. Defendant's motion for summary judgment as to this question will therefore be granted.

E. Attorneys Fees

The final question before the court concerns the plaintiffs' claim for additional attorneys fees incurred by the estate in the prosecution of this refund claim. The estate originally claimed the sum of $15,000 on the federal estate tax return as attorneys fees (D Ex. J) and plaintiffs now request an allowance of an additional $10,000 as the cost of presenting the refund claim and this litigation. Generally, reasonable attorneys fees incurred in connection with the prosecution of an action for refund of taxes are recoverable by the estate. See Purnell v. U. S., 332 F.Supp. 65 (W.D.Pa. 1971). Further, plaintiffs included their claim for additional fees in the original refund claim form 843, thereby giving the Internal Revenue Service and defendant notice of the claim. To date, however, the court has received no evidence of the

amount of fees "actually paid" or what would be proper under the circumstances. *Purnell*, supra. Therefore, pending receipt at the time of trial of evidence with respect to attorneys fees paid by the estate in connection with this claim, the court cannot now award attorneys fees.

For all of the above reasons, the defendant's motion for summary judgment was granted except with respect to the issue of gifts made by decedent in contemplation of death. The plaintiffs' motion for partial summary judgment will be denied, but with leave granted to plaintiffs to submit evidence as to attorneys fees actually paid in connection with the claim for refund and this action.