RICHARD A. CAMPANA, executor, *vs.* COMMISSIONER
OF REVENUE.

No. 87-775.

Suffolk.  March 15, 1988. — June 13, 1988.

Present: DREBEN, CUTTER, & KASS, JJ.

*Taxation,* Appellate Tax Board:  findings; Estate tax; Abatement.

In a proceeding seeking abatement of estate tax on the ground that the de-
cedent's residence was not includable in her gross estate because, prior
to her death, her son had acquired a joint survivorship interest in the
residence for valuable consideration, substantial evidence supported a
determination by the Appellate Tax Board that the residence was includ-
able in the decedent's gross estate inasmuch as it was not acquired from
the decedent by payment of "money or money's worth." [106-109]

APPEAL from a decision of the Appellate Tax Board.

*Christopher Pilavis* for the taxpayer.

*Richard M. Brunell,* Assistant Attorney General, for the
Commissioner of Revenue.

KASS, J.  In filing a Massachusetts estate tax return for the
estate of his mother, Richard A. Campana (acting as executor)
excluded from the gross estate her dwelling house in Wellesley
for the reason (disclosed in the return) that, prior to her death
in 1982, he had acquired a joint survivorship interest in that
real estate for valuable consideration. The Commissioner of
Revenue determined that Campana had not come into the joint
tenancy for money or money's worth and assessed a tax defi-
ciency of $13,844.30.

After the commissioner failed to act on an application for
abatement, Campana, conformably with G. L. c. 62C, § 39(*b*)
(1986 ed.), appealed to the Appellate Tax Board. The board
(after hearing before a single member) decided that the commis-
sioner had rightly included the house in the gross estate, although

it adjusted the fair cash value of the real estate from $147,000 to $133,000. Campana has further appealed under G. L. c. 58A, § 13 (1986 ed.). We affirm the decision of the board.

In summary, these are the facts found by the board. At his mother's request, Campana, in 1972, shortly after his father's death, moved from Boston to take up residence with her at the family home in Wellesley. His purpose was to look after her and her investments, to help her out with bills and maintenance of the property, to take her out to dinner now and then, and to accompany her to social, church, and political events.

Since 1959, Campana has owned and operated a real estate business in Boston. He used employees of that business to repair, paint, and do yard work at the Wellesley property — all without charge to his mother. Campana paid no rent to his mother but did pay real estate taxes on the Wellesley property. From time to time, Campana gave his mother money for food and household expenses. That money frequently was more than she needed and she was wont to deposit the surplus in a savings account she kept in her name and Campana's.

In 1976, four years after Campana had moved out to his mother's house, she, on her initiative, consulted her lawyer and conveyed the Wellesley property to herself and Campana as joint tenants. The deed, which was recorded, recited that the conveyance was for "nominal consideration." Campana had testified otherwise, viz., that, at the time of his father's death, his mother had given Campana to understand that, if he came out to Wellesley to look after her, he would receive the house when she died. In any event, the tax return discloses, Campana was her sole heir. The board arrived at an ultimate finding that Campana had not contributed "adequate and full consideration in money or money's worth" for his joint interest in the Wellesley real estate.

These findings of the board are final if supported by substantial evidence, *Rabinovitz* v. *Commissioner of Revenue*, 396 Mass. 133, 135 (1985), i.e., evidence upon which a reasonable mind might come to the same conclusion of fact. *School Comm. of Brookline* v. *Bureau of Special Educ. Appeals*, 389 Mass. 705, 716 (1983). See also G. L. c. 58A, § 13, and *Southeastern*

*Sand & Gravel, Inc.* v. *Commissioner of Revenue*, 384 Mass. 794, 795 (1981).

The Massachusetts estate tax (with qualifications not here material) falls on the gross estate of the decedent as defined in the Internal Revenue Code of the United States effective on January 1, 1975. G. L. c. 65C, § 1(*a*) and (*f*), and § 2 (1986 ed.). Section 2040[1] of the Code prescribes when and how much of a joint interest shall be included in a gross estate. In pertinent part, § 2040 provides:

> "The value of the gross estate shall include the value of all property to the extent of the interest therein held as joint tenants by the decedent and any other person . . . *except such part thereof as may be shown to have originally belonged to such other person and never to have been received or acquired by the latter from the decedent for less than an adequate and full consideration in money or money's worth*: Provided, That where such property or any part thereof, or part of the consideration with which such property was acquired, is shown to have been at any time acquired by such other person from the decedent for less than an adequate and full consideration in money or money's worth, there shall be excepted only such part of the value of such property as is proportionate to the consideration furnished by such other person . . . " (emphasis supplied).

Expressed more coarsely, the Code charges the estate with the entire value of property which the decedent held jointly with somebody else unless that somebody else can show he paid to acquire his joint interest. The economic consequence is that § 2040 disregards a joint tenancy interest to the extent not originally owned by the survivor or acquired from the decedent by payment, to use the statutory phrase, of "money or money's worth." See Lowndes, Kramer & McCord, Federal Estate & Gift Taxes §§ 14.1-14.4 (3d ed. 1974). Cf. *United States* v. *Allen,*

---

[1] The text is that which appears in 26 U.S.C. § 2040 (1976).

293 F.2d 916, 918 (10th Cir.), cert. denied, 368 U.S. 944 (1961); *Stuart* v. *Hassett*, 41 F. Supp. 905, 907 (D. Mass. 1941).

Campana does not quarrel with that analysis of § 2040. Rather, he insists that during his ten years of residence with his mother he in fact spent — pursuant to the asserted oral contract — more than the fair cash value of the property for maintenance, taxes, insurance, utilities, household supplies, his mother's living expenses, and "companion" services. Accordingly, he claims the right to exclude the Wellesley property entirely from his mother's gross estate.

In the contemplation of the estate and gift tax, consideration for "money or money's worth" is not congruent with what constitutes consideration at common law. The payment for the transfer from the decedent is to have some precision and overtones of the market place. A transfer of property for a promise to marry, for example, does not qualify. See *Commissioner* v. *Wemyss*, 324 U.S. 303, 305 (1945). Similarly, care, comfort, support, love, and filial affection have not been thought to satisfy the "money or money's worth" criterion. Those surely valuable acts lack the element of known price ordinarily involved with the acquisition of property. See *Spaeder* v. *United States*, 478 F. Supp. 73, 79 (W.D. Pa. 1978); *Estate of Garrett*, 12 T.C.M. 1142, 1152 (1953) (decided under a predecessor provision of § 2040); *Estate of Flagg*, 138 Cal. App. 3d 770, 773 (1982). *Flagg* is particularly close on the facts to the case before us. A daughter paid property taxes, insurance, maintenance, and repair costs on her mother's house, as well as contributing to her support — all with the understanding that "she would succeed to ownership of the residence in return for her financial assistance" although the daughter conceded that she would have supported her mother in any event. *Id.* at 771. Those payments, the court observed, "though commendable, were not furnished as part of the *acquisition* cost" (emphasis in original). *Id.* at 773. Construing a statute which parallels I.R.C. § 2040(a), the court concluded that the daughter's upkeep and support payments did not count as a contribution by the daughter to the acquisition of the property.

The lack of a written memorandum of the claimed agreement, its vagueness, and the recital on the deed to Campana that it was for "nominal consideration" are further facts which the board was entitled to consider in arriving at its conclusion that Campana's expenditures were motivated by laudable filial duty, rather than an intent to acquire a property interest. Cf. *Grossman* v. *Campbell*, 368 F.2d 206, 210 (5th Cir. 1966). The board received substantial evidence on the basis of which it could conclude that the decedent's Wellesley residence was includable in her gross estate for Massachusetts estate tax purposes.

*Decision of the Appellate Tax Board*
*affirmed.*