T.C. Memo. 2002-216


UNITED STATES TAX COURT


ESTATE OF MARIE L. CONCORDIA, DECEASED, EDWARD C. McREADY,
EXECUTOR, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 7306-00.                    Filed August 26, 2002.


Edward C. McReady, pro se.

William J. Gregg, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

GERBER, Judge:  Respondent determined a $48,695.49

deficiency in estate tax, and the following issues remain

for our consideration:[1]  (1) Whether the estate may exclude one-half of the value of a residence, of which decedent owned an undivided joint interest, from the gross estate, and (2) whether the estate is entitled to deduct $10,070 in mortgage settlement fees from the gross estate.

## FINDINGS OF FACT[2]

Marie L. Concordia (decedent) was born on November 17, 1911, and died on June 16, 1996.  Decedent's last will and testament provided that decedent's two nieces were to be the sole and equal beneficiaries of the estate.  Beginning in 1951 and until February 1987, decedent lived in a residence on Western Avenue (Western).  When decedent moved into Western, she resided there with her mother, sister (the sole beneficiaries' mother), and two nieces.  Initially, decedent owned Western as a joint tenant with right of survivorship with her sister and mother.

Decedent's mother died in 1961, and decedent's nieces moved from Western during 1964 and 1967 at the times of their respective marriages.  Decedent and her sister continued to reside together at Western from 1967 until February 1987, when decedent's sister died, leaving decedent as sole surviving owner and resident of Western.  During the early 1970s, decedent and

[1] The parties stipulated that the notice of deficiency contained seven adjustments; only two of them remain in controversy.

[2] The parties' stipulations of facts are incorporated by this reference.

her sister purchased a rental property on Bradley Lane (Bradley). Decedent's sister was responsible for managing the Bradley rental activity. Decedent became sole owner of Bradley upon her sister's death.

During the period under consideration, one of decedent's niece/beneficiaries was married to Edward C. McReady, and during 1987 they lived with their 15-year-old son and two dogs at a residence on Primrose Street (Primrose). The McReadys, at that same time, also had two daughters who were away from home attending college. Primrose was within walking distance of Western.

After her sister's death in 1987, decedent was 75 years old and in good health. Although she was independent and capable of living alone, decedent decided that she could no longer live at Western. She made that decision because of anguish caused by the memories of her sister at Western and because she did not feel safe living alone at Western. She considered living in an apartment near Western so that her two dogs could be kept at Western and not confined to an apartment. She located some apartments with monthly rent in a range from $1,000 to $1,500. Decedent was not financially able to live in an apartment and to maintain her dogs at Western.

Around that same time decedent conferred with Mr. McReady about other alternatives. Decedent inquired whether she could live at Primrose with her dogs and pay rent that she could finance by either renting or selling Western. The McReadys were not willing to board her dogs, because they already had two dogs of their own. Further discussions and negotiations resulted in an agreement under which decedent agreed to deed Western to the McReadys, and Mr. McReady would manage the rental activity at Bradley for decedent. It was also understood that decedent would live with the McReadys at Primrose, that decedent's dogs could remain at Western, and that the McReadys' daughters would reside at Western during breaks from college and after their graduations. It was also expressly understood that as long as the McReady children used Western, decedent would have access to visit and care for her dogs.

Decedent did not execute a deed to Western until November 1990, when she deeded Western to herself and her niece Mrs. McReady as joint tenants. The transfer by deed did not take place until almost 4 years after the agreement because of Mr. McReady's request for a delay. He was the subject of a lawsuit and did not wish to have additional property in his name. Mr. McReady was not made a joint tenant of Western. At the time of the transfer by deed, it was agreed to make decedent a joint tenant on Western in order to continue to take advantage of

homestead and senior citizen deductions available in the District of Columbia.

In accord with the agreement, decedent resided at Primrose with the McReadys from February 1987 through the time of her death, June 1996. During most of that period, decedent continued to be in good health, and she took care of her own needs. Decedent was also financially self-sufficient during that period. During that period, various of the McReady children occupied Western in accord with the agreement. Also, Mr. McReady managed the Bradley rental property during the period 1987 through decedent's death, placing tenants, negotiating leases, collecting rents, and seeing to its maintenance.

Mr. McReady lent decedent $95,000 to enable her to pay off an existing mortgage and refinance the Bradley mortgage to obtain more favorable interest rates.

At the time of decedent's death, Western had a fair market value of $270,000, 50 percent ($135,000) of which was included in the gross estate. The remainder of the principal assets in the gross estate consisted of: Bradley ($280,000); securities ($227,913); and cash and bank accounts ($56,983). The deductions from the gross estate included: Funeral expenses ($11,736); attorney's fees ($1,481); other expenses ($1,653); financing and closing costs incurred to refinance Bradley ($10,070); and debts of decedent ($109,152, $95,000 of which was due to Mr. McReady).

Mr. McReady, as executor of decedent's estate, decided to refinance Bradley in order to distribute liquid assets to one of the two heirs. Mr. McReady reasoned that Bradley was under a long-term lease and that he would have to refinance the property to remove equity to pay one of the beneficiaries her share in liquid assets, rather than to deed Bradley to them as cotenants. Mrs. McReady and her sister, as the nieces and beneficiaries of decedent, each received assets worth $225,800 from the estate, and Mr. McReady received $8,400 and repayment of the $95,000 decedent owed him.

At the time of trial, the per-month rental value of Primrose was $4,500 to $5,000. Using the Consumer Price Index, as published by the U.S. Department of Labor, Bureau of Labor Statistics, the average (on the basis of $4,750 per month) indexed rent for Primrose from March 1987 to June 1996 was $408,560.

                                OPINION

The estate has contested respondent's determinations that the entire value of Western was includable in the gross estate and that the estate is not entitled to deduct the closing costs incurred to refinance the Bradley rental property.

A. <u>Is the Estate Required To Include the Full Value of Western in the Gross Estate?</u>

The estate tax is levied on the taxable estate. Sec. 2001(a).[3] The taxable estate equals the gross estate, less deductions. Sec. 2051. Generally, under section 2033, the gross estate includes the value of all property to the extent of a decedent's interest therein at the time of death.

In particular, the question we consider is governed by section 2040(a), which, in pertinent part, provides:

> SEC. 2040 (a). General Rule.--The value of the gross estate shall include the value of all property to the extent of the interest therein held as joint tenants with right of survivorship by the decedent and any other person, * * * except such part thereof as may be shown to have originally belonged to such other person and never to have been received or acquired by the latter from the decedent for less than an adequate and full consideration in money or money's worth: <u>Provided</u>, That where such property or any part thereof, or part of the consideration with which such property was acquired, is shown to have been at any time acquired by such other person from the decedent for less than an adequate and full consideration in money or money's worth, there shall be excepted only such part of the value of such property as is proportionate to the consideration furnished by such other person: * * *

If part of the consideration is found to have been contributed by the surviving joint tenant, then the part of the value of the property that is proportionate to such consideration

---

[3] All section references are to the Internal Revenue Code, as amended and in effect as of the date of decedent's death, and all Rule references are to the Tax Court Rules of Practice and Procedure.

is not included in the decedent's gross estate.  Sec. 20.2040-1, Estate Tax Regs.

Section 2040 creates a rebuttable presumption that the entire value of the jointly owned property is includable in the decedent's estate with the burden falling upon the estate to show the consideration.  Hahn v. Commissioner, 110 T.C. 140, 144 (1998); Estate of Heidt v. Commissioner, 8 T.C. 969 (1947), affd. per curiam 170 F.2d 1021 (9th Cir. 1948).  Finally, our determination of whether Mrs. McReady provided consideration adequate to exclude from decedent's gross estate one-half the value of the Bradley property is a factual one.  Estate of Heidt v. Commissioner, supra at 974.

Respondent argues that the estate has not shown that there was sufficient consideration.[4]  The estate counters that there was adequate consideration in the form of property management services with respect to Bradley and the living accommodations provided by the McReadys to decedent, all in exchange for an interest in Western.

In particular, respondent relies on Spaeder v. United States, 478 F. Supp. 73, 79 (W.D. Pa. 1978).  In that case the

---

[4] Respondent also argued that no valid agreement existed between decedent and the McReadys because it was an unenforceable oral agreement to convey real property.  We quickly dispense with that argument because decedent actually deeded the property to Mrs. McReady and herself, albeit almost 4 years after the parties' oral agreement.

deceased, less than 2 years before his death at 85 years old, had suffered a broken hip that left him unable to climb the stairs of his residence. As a result he gave approximately $100,000 to two friends on the understanding that they would use the money to acquire a residence of which the deceased was entitled to occupy a portion. The acquired residence was held by the deceased and his two friends as joint tenants with right of survivorship.

The estate in that case argued that the friends had supplied some of the monetary consideration to purchase the residence and that they provided consideration to the deceased in the form of "care, comfort, and support". Id. The District Court found that the deceased had provided all of the monetary consideration and "that care, comfort, and support to * * * [the deceased] cannot constitute consideration furnished for the acquisition of the real estate * * * [because section 20.2040-1(a), Estate Tax Regs.] requires that the consideration be adequate and full in money or money's worth". Id.

The estate in this case contends that Spaeder does not stand for the absolute legal principle that the providing of living accommodations can never be adequate consideration for purposes of section 2040. In addition, the estate contends that decedent's circumstances are factually distinguishable from those in Spaeder.

We agree that the holding in Spaeder is limited to the facts of that case and that the facts we consider here are distinguishable. In Spaeder, the deceased had put up the entire amount of consideration and lived in the residence acquired in joint tenancy with friends. In addition, the deceased in that case was older than decedent here, and he was infirm and in need of care. Decedent here exchanged an interest in Western for: (1) The right to reside in Primrose, (2) the right to maintain her dogs at Western, and (3) the services of Mr. McReady in managing Bradley. Decedent was in good health and self-reliant at the time of the 1987 agreement. Although she housed her dogs at Western, she was seeking a more secure place to reside after the death of her sister, who had lived with decedent for an extended period.

We recognize that Mrs. McReady, along with her sister, was the natural object of decedent's bounty and named as the sole heir of decedent, and that fact causes us to more closely scrutinize their transactions. However, it does not automatically negate their agreements. See Caligiuri v. Commissioner, 549 F.2d 1155, 1157 (8th Cir. 1977), affg. T.C. Memo. 1975-319; Perry v. Commissioner, 92 T.C. 470, 481 (1989), affd. 912 F.2d 1466 (5th Cir. 1990).

It is important to note that Mrs. McReady and her sister, as beneficiaries, each received a distribution of assets worth

$225,800. The consideration received by the McReadys is outside of that distribution. In other words, the deeding of Western in 1990, 6 years before decedent's death, was outside of the equal division of the probate estate. Upon the death of decedent, Mrs. McReady became the sole owner of Western.

Although respondent questions whether the facts in the record support the ultimate conclusion that there was an agreement and that consideration was exchanged, the credible and uncontradicted testimony of witnesses and corroborating evidence in the record support the existence of the agreement and the exchange of consideration between the parties.

Having decided that there were an agreement and the exchange of consideration, we must now decide the amount of "adequate and full" consideration given by the McReadys in exchange for an interest in Western.[5] The estate contends that there are two types of the consideration exchanged for Bradley--the rental

---

[5] We observe that the original agreement between the McReadys and decedent was to deed full fee ownership to the McReadys. On account of Mr. McReady's concerns about ownership of assets in his name because of pending unrelated litigation, the deeding of Western was delayed until 1990, and, ultimately, only an undivided one-half interest was deeded to Mrs. McReady. In part, decedent remained a joint owner of Western to take advantage of real property tax benefits. Although these variations from the agreement may have some legal implications, neither party has focused on this aspect. Perhaps the fact that only one-half the fair market value of Western was excluded from the gross estate has mooted any question about this aspect.

value of Primrose and the value of Mr. McReady's services in managing Bradley.

With respect to the fair rental value, the estate called two expert witnesses and through their testimony was able to establish an indexed fair rental value for Primrose. We have found that the fair rental value of Primrose for the period under consideration was $408,560. With three adults sharing Primrose, we use one-third of the rental value or $136,187 as the consideration attributable to the decedent's use of Primrose. The rental value was calculated for the amount of time that decedent actually survived from the time of the 1987 agreement.[6]

We note that $136,187 is greater than one-half the $270,000 fair market value of Western at the time of decedent's death. However, the standard for evaluating the amount of consideration in this context is specifically set out in section 20.2040-1(a), Estate Tax Regs.[7] That formulaic approach to

_____

[6] We note that the fair rental value was derived by multiplying the number of years that decedent actually lived with the McReadys by the annualized fair rental value on the basis of Bureau of Labor Statistics indexes. Decedent survived almost 9 years from the time of the 1987 agreement with the McReadys. Decedent was 75 years old at the time of the agreement, and her life expectancy, at that time, was somewhat longer than she actually survived. Accordingly, the estate's approach to value was conservative.

[7] Sec. 20.2040-1(a)(2), Estate Tax Regs., in pertinent part, provides:

the entire value of * * * [jointly held] property is
(continued...)

- 13 -

determining the portion of the fair market value of a jointly
held asset that should be excluded from the gross estate, may be
expressed as follows:  the fair market value of the property at
the date of death is multiplied by a ratio that has the
consideration furnished by the survivor as the numerator and the
total consideration paid to acquire and improve the property as
the denominator.  See Estate of Young v. Commissioner, 110 T.C.
297, 315 (1998); Estate of Van Tine v. Commissioner, T.C. Memo.
1998-344.

The approach used in section 20.2040-1(a)(2), Estate Tax
Regs., measures the survivor's contribution to the jointly owned
property against the decedent's contribution.  At the time of the
1987 agreement, decedent's sister had just died, and decedent had
become the sole owner of Western.  However, the regulation, with
respect to the denominator of the exclusionary formula, uses the
language "total cost of acquisition and capital additions."

It is somewhat difficult to apply the concept of cost to the
circumstances of this case.  In 1987, decedent had just acquired

_____

7(...continued)
included [in decedent's gross estate] except such part
of the entire value as is attributable to the amount of
the consideration in money or money's worth furnished
by the other joint owner or owners.  * * *  Such part
of the entire value is that portion of the entire value
of the property at the decedent's death * * * which the
consideration in money or money's worth furnished by
the other joint owner or owners bears to the total cost
of acquisition and capital additions.  * * *

the sole ownership of the property as sole surivivor of three joint tenants culminating a 36-year period.  In 1987, decedent exchanged an undivided one-half interest for a place to live and for services.  As it relates to decedent, it could be said that her cost might have been the amount she paid, if any, at the time (1951) she began occupying Western.

No matter which approach we use, the cost, plus improvements of Western, would not exceed its $270,000 agreed fair market value as of the time of decedent's death in 1996.  Using the $270,000 in the denominator of the fraction clearly sets a higher bar for the estate's quest for exclusion of Mrs. McReady's joint interest.  We are not called upon to decide whether an exclusion of more than one-half of the fair market value from decedent's gross estate may have been warranted because the McReadys may have paid more consideration than decedent; the parties have not placed these aspects in issue or addressed them.

Our holding that $136,187 was the indexed fair rental value exchanged for the undivided one-half interest in Western satisfies the estate's burden of showing that Mrs. McReady's acquisition was for an adequate and sufficient consideration to support the estate's claim that $135,000 of the $270,000 fair market value can be excluded from the gross estate.

Although the estate has satisfied its burden with respect to excluding $135,000 from the gross estate, we note that we have

not decided the value of the services performed by Mr. McReady in managing the Bradley rental property. On this record, his services would likely be difficult to value, but if those services should be included in the numerator of the formula for exclusion, it is clear that additional value would be added to the numerator of the exclusionary equation because of his performance over 9 years. Because the estate has shown sufficient consideration to warrant the exclusion of one-half of the fair market value of Western (the amount claimed by the estate), we need not address the value of Mr. McReady's services in managing Bradley.

B.  **Is the Estate Entitled To Deduct the $10,070 Mortgage Settlement Fees From the Gross Estate?**

The estate claimed a $10,070 mortgage settlement fee as an administrative expense. The $10,070 was incurred in the refinancing/mortgaging of the Bradley rental property in order to take value from that asset to pay the estate's debts.

Generally, administrative expenses are deductible from the gross estate in computing the taxable estate. Sec. 2053(a)(2). More specifically, deductible administrative expenses must be actually and necessarily incurred in the administration of the estate, which includes the payment of debts and distribution of the property to persons entitled to it. Sec. 20.2053-3(a), Estate Tax Regs. Expenditures incurred for the individual

benefit of the heirs may not be deducted from the gross estate, if not essential to the settlement of the estate. Id.

The gross estate here, in addition to one-half of the value of Western, consisted of cash, securities, and the Bradley rental property. The debts, funeral expenses, and other administrative expenses, totaling $124,022, consumed the $56,983 of cash. In that setting the executor decided to obtain cash from refinancing and mortgaging Bradley, rather than selling securities. Mr. McReady, the executor, explained that he mortgaged Bradley, "because the * * * [Bradley] was then occupied by a tenant under a long-term lease."

Respondent contends that one of the factors we should consider is that the estate's major debt was $95,000, which was owed to the executor, Mr. McReady, causing the estate's lack of liquidity. Respondent also points out that the securities (over $200,000) or Bradley could have been sold subject to the long-term lease to pay off the $95,000 debt due Mr. McReady and the other obligations of the estate. Respondent also argues that the estate failed to show that a sale of Bradley would have been insufficient to pay off the debts.

We agree with the estate that the $10,070 was necessarily incurred in the administration of the estate. We surmise that Mr. McReady's explanation that Bradley was subject to a long-term lease means that Bradley would bring less than a fair market

value price or that the lease would cause some other impediment to the sale. In the circumstances here, Mr. McReady, as executor, had three basic choices: (1) Sell Bradley, (2) distribute it in kind to the nieces as cotenants, or (3) distribute it in kind to one niece in fee simple. Because there was insufficient cash and liquid assets to satisfy the debts of the estate and distribute Bradley in kind to one niece, it was necessary to refinance it to accomplish that end.

After Bradley was mortgaged, the estate was divided by cashing out Mrs. McReady's sister and transferring to Mrs. McReady the mortgaged Bradley property and the remainder of the estate, which likely included securities. Respondent contends that we should be influenced by the fact that most of the estate's debt ($95,000) was owed to the executor, Mr. McReady. Respondent contends that this was more to the McReadys' benefit than the estate's. We do not agree with respondent's reasoning. It makes no difference that the debt was due to Mr. McReady rather than to a bank. There is no question about the validity of the debt, so that it makes no difference to whom it is owed.

Accordingly, we hold that the estate is entitled to reduce the gross estate by the $10,700 in mortgage settlement fees.

To reflect the foregoing,

Decision will be entered

under Rule 155.