## Thaw Estate.

348

Argued March 20, 1964. Before BELL, C. J., MUS-MANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*Stephen E. Nash,* with him *J. Garfield Houston, Henry V. Blaxter, Jr.,* and *Blaxter, O'Neill, Houston & Nash,* for appellants.

*Sebastian C. Pugliese, Jr.,* Assistant United States Attorney, with him *Gustave Diamond,* United States Attorney, for United States of America, appellant.

*James Craig Kuhn, Jr.,* with him *Wilner, Wilner & Kuhn,* for Koussevitzky Music Foundation, Inc., appellant.

*James M. Arensberg,* with him *Patterson, Crawford, Arensberg & Dunn,* for University of Pittsburgh, appellee.

OPINION BY MR. JUSTICE JONES, May 11, 1964:

These appeals raise four questions:[1] (1) against whom are the death taxes chargeable under the provisions of this will? (2) are twenty-eight pecuniary legatees, whose legacies were delayed in payment, entitled to payment of interest on their legacies? (3) whether the Library of Congress Trust Fund Board (Board), to whom, by reason of a stipulation, a partial distribution of one pecuniary legacy will be made, has a standing to appeal? (4) if the Board has standing, is the Board exempt by law from the payment of death taxes on the amount of the legacy awarded to it?

Resolution of the first two questions depends upon a construction of the last will of Jane O. Thaw (testatrix), who died, a New Hampshire resident, on November 28, 1958, leaving assets in New Hampshire of upwards of $580,000, and assets in Pennsylvania of upwards of $1,600,000.

An examination of testatrix' twelve-paragraph lawyer-prepared will must be made. The first six paragraphs provide for disposition of certain personalty, disposition of testatrix' home in Dublin, New Hampshire and personalty connected therewith, for payment of twenty specific-dollar-amount legacies totalling $588,-000, and directions for testatrix' burial. The last

---

[1] The Barbour, Humphrey, Ehlermann Estate and Conrad appeals raise the first two questions and the United States of America and Koussevitzky Music Foundation appeals raise all four questions.

three paragraphs provide the manner of sale of testatrix' realty and personalty, the power of the executors and trustees to make investments and the exercise of powers of appointment. A codicil, made several years after the will, does not materially aid in the construction of the will. In construing this will, we must consider Paragraphs Seven, Eight (h) and Nine (a), (c).

The Seventh paragraph, crucially important in this litigation, provides: "All the rest, residue and remainder of [her] property, real and personal, wherever situate, and all property over which [she had] any power of appointment" the testatrix gave to named trustees in trust for the utilization of the net income, in part or whole, for the support of testatrix' aunt during her lifetime; upon the aunt's death, the trustees were directed to distribute the principal, undisbursed income and "all other property" of testatrix in the following manner: to pay twenty-eight specific-dollar legacies, totalling $420,000, to certain named persons, charitable institutions, foundations, etc. (Paragraph Seven, (1) to (28), inclusive), and to distribute "the entire balance of said trust fund" to Pittsburgh University (University), as a memorial to testatrix' husband to be used for research in blood diseases, particularly leukemia (Paragraph Seven, (29)).

In Paragraph Eight, (h), testatrix directs ". . . that so far as possible all taxes which may be payable with respect to any legacy given by this will shall be paid out of the *residue* of [her] estate." (Emphasis supplied). In Paragraph Nine, (a), testatrix directs that, if her estate is insufficient to pay the testamentary bequests, all bequests other than those given in Paragraph Seven shall be paid in full and that each bequest in Paragraph Seven shall abate proportionately. Paragraph Nine, (c), provides that if "any legatee or devisee . . . is not alive at the time of [testatrix'] death, the bequests, legacies and devises to such legatee or de-

visee . . . shall become part of the residue of [testatrix'] estate".

At audit, the University presented a petition for an apportionment of the federal estate tax in the amount of $347,764.97 among all twenty-nine legatees under Paragraph Seven. Resolution of this question, raised by the University, initially depends upon a construction of testatrix' intent as expressed in Paragraph Eight, (h), of her will, wherein she directs that "all taxes . . . payable with respect to any legacy given by this will shall be paid out of the *residue* of [testatrix'] estate." (Emphasis supplied)

The University's position is that the testatrix' language "residue of my estate" in Paragraph Eight, (h), refers to Paragraph Seven *in its entirety* and that the twenty-nine legatees named therein, all sharing in this "residue", must each bear a proportionate share of the federal tax liability. Appellants' position is that Paragraph Seven of the will "creates a general residue and within that an ultimate residue", i.e., that the ultimate and real "residue" is the "balance" of the general residue given to the University, and that it was testatrix' intent that this ultimate "residue" bear the burdens and take the benefits incident to such "residue" and, therefore, the burden of payment of the federal estate tax liability should fall upon the ultimate legatee of such "residue", i.e., the University. Appellants' second, and alternative, position is that, even if the word "residue" be construed to mean Paragraph Seven in its entirety, nevertheless, such federal tax liability would ordinarily fall on the "balance" given to the University under Paragraph Seven, section 29, because such tax liability, has, in effect, been paid by the executors out of the general residuary fund and out of this fund, reduced by the tax payments, the residuary legatees who are to receive specified amounts must first

be paid and, only thereafter, does the University take the "balance".

The court below concluded that, when testatrix in Paragraph Eight, (h), referred to "residue of [her] estate", she referred to the entire estate disposed of in Paragraph Seven and not simply to that portion of the estate disposed of in the 29th section of Paragraph Seven. In reaching such conclusion, the court below relied on the language of Paragraph Nine (a) and (c), on its own construction of Paragraph Seven and, inferentially, on the fact that testatrix and her husband were Pittsburgh natives and the court's own belief that the University was intended to be the principal beneficiary of testatrix' bounty. We shall demonstrate that each premise upon which the court below reached its result does not support such result.

Testatrix has identified the source from which all death taxes, "payable with respect to any legacy", shall be paid, and her direction is that the *residue* of her estate shall pay such taxes. To what did testatrix refer by the use of the word "residue"—Paragraph Seven *in its entirety* or only the 29th Section thereof?

In *Armstrong Estate,* 347 Pa. 23, 25, 31 A. 2d 528, we said: "It is well settled that where a testator manifests *an intent to dispose of everything not otherwise disposed of by the will,* the dispositive clause is regarded as residuary; no technical mode of expression is necessary: [citing cases]". (Emphasis supplied). See also: *Yeisley Estate,* 358 Pa. 200, 202, 56 A. 2d 205; *Bricker's Estate,* 335 Pa. 300, 303, 6 A. 2d 905. In *Carson's Estate,* 130 Pa. Superior Ct. 133, 140, 196 A. 527, 530, the Court stated: " ' "The residue" of a man's estate, in testamentary language, *means whatever is not specifically devised or bequeathed,* and in whatever part of a will it may happen to be found it ought to have that meaning, unless the whole will taken together shows clearly that it was not so intended. A will be-

queathing the residue of personalty passes everything not otherwise effectually disposed of:' [Bouvier's Dict., Residue]: Willard's Appeal, 68 Pa. 327, 332".[2] (Emphasis supplied).

Paragraph Seven of this will commences with words customarily and ordinarily employed to describe a residuary estate—"All the rest, residue and remainder of my property"—and, in *such* estate, testatrix created a trust whereunder the aunt-life tenant was to receive part or all of the net income as her needs required and, upon the aunt's death, the principal was to be distributed initially by the payment of twenty-eight specific-dollar legacies and *then* the "entire balance of said trust fund" was to be given to the University. This testamentary provision clearly created in Section 29 "a residue of a residue". In *Slater Estate*, 377 Pa. 285, 288, 105 A. 2d 59, we said: "A testator, in disposing of his residuary estate, may carve therefrom portions of the residue and devise and bequeath such portions to designated persons or uses, and then pass *that which remains* to others. This is a typical situation of a 'residue of a residue'". *Carson's Estate*, supra, is illustrative of "a residue of a residue". In *Carson*, the testator, after providing for payment of debts and funeral expenses, the payment of a cash sum to his wife, a devise to his wife of a life interest in realty and the payment of certain bequests, gave "all the rest, residue and remainder of his estate" in trust for certain purposes: (a) to pay $100,000 to $125,000 annually to his wife for life, (b) to give his wife the power of appointment as to $500,000 of the trust principal, (c) to pay annuities of $6,000 to each of testator's brothers

---

[2] The "residue" is that which remains after a part is taken: *France's Estate*, 75 Pa. 220, 224; *Fisher's Estate*, 302 Pa. 516, 521, 153 A. 736; *Rettew's Estate*, 142 Pa. Superior Ct. 335, 339, 16 A. 2d 322; *Berger v. Burnett*, 95 N.J. Eq. 643, 123 A. 879, 880; *Stevens v. Underhill*, 67 N.H. 68, 36 A. 370, 372.

and sisters, (d) to make other bequests of income and then "[a]s to the balance of said net income of [testator's] residuary estate", the income was to be accumulated and held with the principal for Carson College; upon the wife-life tenant's death, the trustees were directed to hold the "rest, residue and remainder" of the estate and to set aside $1,000,000 to erect buildings for the college and, after payment of the annuities, the "balance" of the net income was to be paid to the college. The Superior Court said: ". . . we are in fact dealing with a residue of a residue". (p. 139). Cf. *Slater*, supra.

In disposing of the ultimate "residue" (Paragraph Seven, (29)) of the "residue" (Paragraph Seven, first paragraph, (1) to (28), inclusive,) the testatrix referred to that portion of her estate which was to be given to the University as the "entire balance of said trust fund."[3] In *Taylor's Estate,* 239 Pa. 153, 163, 86 A. 708, 711, we said: "The 'entire balance of my estate' is equivalent to the 'residue' of the estate, and, . . ., 'the residue of a testator's estate means what is left after all his liabilities are discharged and all the purposes of the testator are carried into effect'". See also: *Thompson's Estate,* 237 Pa. 165, 169, 85 A. 104; *Brothers Estates,* 156 Pa. Superior Ct. 292, 295, 40 A. 2d 156.

It is testatrix' dispositive language that is of vital importance, and we must determine from such lan-

---

[3] "It may be true that the word 'balance' in the sense of residue or remainder is not considered elegant English, but in this country it is very often used in that sense, and there is no difficulty in understanding what the testator meant by the phrase 'balance of my estate' . . . .": *Lopez v. Lopez,* 23 S.C. 258, 269. The "balance" is equivalent to "rest, residue, what remains or is left over": *Owens v. Bank of Glade Spring,* 195 Va. 1138, 81 S.E. 2d 565, 569; *Bricker's Estate,* 335 Pa. 300, 303, 6 A. 2d 905; *Bunnell v. Beam,* 86 N.J. Eq. 101, 97 A. 494; *Plumly's Estate,* 261 Pa. 432, 435, 104 A. 670.

guage whether we are dealing with a residuary clause in the truest sense. Testatrix in Paragraph Seven set up a general residuary estate out of which, after testatrix' aunt's death, twenty-eight different legatees were to receive legacies in specified-dollar amounts and *then* the "entire balance" of the trust fund created under this general residuary clause—that is, whatever remained after meeting the obligations provided for in Paragraph Seven—was given to the University. If payment of the pecuniary legacies exhausted the fund, the University would not receive anything. That which testatrix manifestly intended Section 29 to convey to the University is *that which was left* after all the dispositions in prior portions of her will had been satisfied.

Paragraph Eight, (h), clearly reveals an intent on testatrix' part that *all* the legacies under the will should be, if possible, tax free. When testatrix desired to draw a distinction between the treatment to be accorded to what the court below called "preresiduary legacies", i.e., the bequests other than in Paragraph Seven, and to what the court below called the "residuary legacies", i.e., the bequests contained in Paragraph Seven, she did so as illustrated in Paragraph Nine, (a). Moreover, Paragraph Eight, (h), reveals testatrix' intent that *all* taxes with respect to *any* legacies should be tax free. The use of the all-embracive word "any"[4] coupled with the fact that testatrix drew no distinction in respect to freedom from tax liability between the so-called "preresiduary legacies" and the so-called "residuary legacies" is a clear indication that the testatrix intended the legacies in Paragraph Seven to be tax free.

The construction by the court below of the impact of Paragraph Nine, (a)—dealing with the abatement

---

[4] *Hoffmann Estate*, 399 Pa. 96, 100 (footnote), 160 A. 2d 237.

of legacies—upon the legacies in Paragraph Seven is difficult to understand. Had testatrix' assets been insufficient to pay in full the amount of the pecuniary legacies in Paragraph Seven, the court below concludes that such legacies *and* the gift to the University, under Section 29, of the "entire balance" of testatrix' trust fund would have abated proportionately. That is just not so. Had the assets of testatrix' estate been insufficient to pay in full the twenty-eight legacies in Paragraph Seven, then the gift to the University would not have been *abated* but *extinguished*. See: Page on Wills, (Vol. 4) §33.60, p. 395. Under Section 29, the University became entitled only to that which remained of testatrix' estate after all the legacies, taxes, debts, administrative expenses, etc. had been paid.

The court below relied also on Paragraph Nine, (c), dealing with lapsed legacies. Thereunder, testatrix directed that a lapsed legacy should "become part of the residue of [her] estate". Therefore, the court below reasoned, since the word "residue" refers to Paragraph Seven *in its entirety,* it would be a "strange and illogical conclusion" to hold that such lapsed legacies were intended to enlarge the University's share and "not the whole residue of the estate", i.e., the twenty-eight pecuniary legacies *plus* that of the University. The most cursory examination of Paragraph Seven contraindicates such reasoning. Each of the twenty-eight legatees in Paragraph Seven are given *specific-dollar-amount* legacies. Under the rationale of the court below, for instance, testatrix' bequest of $50,000 to the Animal Rescue League of Boston would be increased, in the event of a lapsed legacy, by its proportionate share of such lapsed legacy. That would be contrary to testatrix' direction; the testatrix gave the League $50,000 and no more. Cf. *Grier Estate,* 403 Pa. 517, 523, 170 A. 2d 545. To adopt the rationale of the court below would be to negate testatrix' express direction

as to the amount of specific dollars to be awarded to the legatees under Sections (1) to (28), inclusive.

From the testamentary language, testatrix' plan is clear beyond question. The University, under Section 29, was to receive *only* that part of testatrix' estate which remained after payment of the estate obligations, whether debts, expenses, taxes or legacies. Testatrix clearly intended that *all* the legacies, so far as possible, were to be tax free and, when testatrix referred to the "residue" of her estate as the source of payment of such taxes on these legacies, she referred to the ultimate or second "residue" of her estate as contained in Section 29 and not to Paragraph Seven in its entirety.[5]

The result of the conclusion reached by the court below is that the twenty-eight legatees, who were given specific-dollar amounts under Sections (1) to (28), inclusive, would have their legacies reduced by approximately 31% and what was taken from them would be given to the University. Such a result is contrary to testatrix' intent so manifestly evident from an examination of her will in its entirety and, particularly, the language contained in Section 29 of Paragraph Seven.

Lastly, was the University intended as *the* principal beneficiary of this estate? A reading of the will indicates that the principal object of testatrix' concern was her aunt, Mrs. Goodale (Paragraph One, (f), Paragraph Three, Paragraph Seven (opening paragraph), Paragraphs Two and Three of Codicil). Uppermost also in testatrix' mind was her friend, Eleanor A. Humphrey, to whom she gave jewelry (Paragraph One,

---

[5] "It seems clear from the definition of a residuary gift in Armstrong's Estate, 347 Pa. 23, and from the discussion in Bricker's Estate, 335 Pa. 300, that these provisions of the Wills Act, [§14, (9), (10)] refer to the general or ultimate residuary clause and not to gifts of the 'residue' of particular property or a specified sum". Bregy, Intestate, Wills and Estates Acts of 1947, p. 3310.

(a)), a painting (Paragraph One, (c)), antiques (Paragraph One, (e)), a gift over of automobiles and personal effects (Paragraph One, (f)), a remainder interest in her home and the personalty connected therewith (Paragraph Three), a legacy of $200,000 (Paragraph Four), and a legacy of $150,000 (Paragraph Seven). If the University's position is correct, Mrs. Humphrey, instead of receiving the legacy of $150,000, would receive approximately $95,000. On the other hand, the University receives a legacy of $200,000 (Paragraph Five, (g)) and the "entire balance" of testatrix' property under Paragraph Seven, (29); what the latter will amount to will depend entirely on the size of testatrix' estate. No doubt, the University was intended to be *a* principal beneficiary but not *the* principal beneficiary. Even if the "residue" given under Section 29 bears the burden of payment of the death taxes, the University will certainly be *a* principal, if not *the* principal, beneficiary dollarwise.[6]

The death taxes in this estate must be borne by the "residue" or "entire balance" of the estate given to the University under Section 29.

The next question is whether the legatees under Paragraph Seven, Sections (1) to (28), inclusive, are entitled to the payment of interest on their legacies for delay in payment. Preliminarily in its discussion as to interest, the court below was concerned as to whether interest should be allowed in accordance with the 6% rate of New Hampshire, the 3% rate of Pennsylvania, or the rate of interest earned by the estate.

---

[6] If it bears the impact of the death taxes, the University, in addition to its $200,000 legacy, will receive approximately $362,000 or a total of $562,000. If the taxes are apportioned among all the legatees under Paragraph Seven, the University, in addition to its $200,000 legacy, would receive approximately $524,000 or a total of $724,000.

The court below held that the "matter of the allowance of interest on a legacy is a question of distribution involving a substantial property right and is governed by the law" of decedent's domicil and that, under the law of New Hampshire, wherein testatrix was a domiciliary, pecuniary legacies bear interest at 6% after the expiration of one year from the date of decedent's death. With such conclusion we are in agreement.

In denying the claims of the pecuniary legatees under Paragraph Seven to interest,[7] the court below relied on its erroneous conclusion that the "residue" of the estate was Paragraph Seven *in its entirety* and not the "entire balance" under Section 29. In our view, *all* the legacies created by testatrix under this will, *including the legacies under Paragraph Seven,* are entitled to interest at the rate of 6% beginning a year after the date of testatrix' death.

It is to be noted that the court below divided the accumulated administrative income, which remained after payment of interest to the "preresiduary legacies", pro rata among all the beneficiaries under Paragraph Seven, including the University. Such was erroneous. The University would take only such portion of the accumulated administrative income as remains after payment of interest to all testatrix' legatees, if any such portion remains.

Under Paragraph Seven, (5), testatrix provided a legacy: "To the KOUSSEVITZKY MUSIC FOUNDATION of Washington, D. C., the sum of Fifty Thousand Dollars ($50,000.00)". Seeking payment of this bequest were two claimants, the Koussevitzky Music Foundation, Inc., a New York corporation, and the Serge Koussevitzky Music Foundation in the Library of Congress,

---

[7] The court below allowed 6% interest on all legacies other than those given under Paragraph Seven.

administered by the Library of Congress Trust Fund Board.[8] Both foundations entered into a stipulation to share the bequest on an equal basis, such stipulation was filed in the court and distribution was made in accordance with the stipulation. As a result of the ruling in the court below that all the legatees under Paragraph Seven had to bear proportionately the federal estate tax liability, the court reduced the Board's twenty-five thousand dollars share of the bequest by the sum of $7,752.79.

On this appeal, the Board contends that, by reason of the Act of March 3, 1925, C. 423, §5, 43 Stat. 1108, as amended, 2 U.S.C. §161, it is exempt from *all* Federal taxes on gifts or bequests to it. In calculating the amount of the taxable estate in the case at bar, the legacy under Paragraph Seven, (5), was deducted and, to such extent, the gift was exempted from taxation. However, the court below held that the Board was not exempt from bearing a proportionate share of the federal estate tax, the payment of which was imposed by testatrix on the "residue" of her estate. Such a ruling was premised on the conclusion that *all* of the pecuniary legatees under Sections (1) to (28), inclusive, of Paragraph Seven were proportionately liable for payment of the federal estate tax.

Since we have determined that such a conclusion was erroneous and that the burden of paying the tax is on the University to whom the ultimate "residue" of this estate was given, it is unnecessary to consider either the question of the Board's standing to take this appeal or its exemption from a tax on the bequest.

Decree reversed. Costs on Estate.

---

[8] Established by the Act of March 3, 1925, C. 423, §1, 43 Stat. 1107, 2 U.S.C.A. §154.