332 Pa. Superior Ct. 584 (1984)
481 A.2d 943
In the Matter of TRUST B UNDER the CHARLES F. PASSMORE AGREEMENT OF TRUST DATED SEPTEMBER 3, 1970.
Appeal of the EVANGELICAL CHURCH OF THE GOOD SHEPHERD.
Supreme Court of Pennsylvania.
Argued April 5, 1984.
Filed September 7, 1984.
*585 Ronald Katzman, Harrisburg, for appellant.
Donald R. Waisel, Harrisburg, for appellee.
Before WICKERSHAM, OLSZEWSKI and HOFFMAN, JJ.
WICKERSHAM, Judge:
This is an appeal from an order of the Court of Common Pleas of Dauphin County dismissing the objections filed by *586 the Evangelical Lutheran Church of the Good Shepherd (hereinafter, "Church"), appellant herein, to a schedule of distribution under a trust.
On September 3, 1970, Charles F. Passmore (hereinafter "Settlor") established a funded Revocable Agreement of Trust. The Trust consisted of two parts, appropriately titled Trust A and Trust B. Under the terms of the Trust Agreement, the Settlor's wife, Laura O. Passmore, was given a life income interest from both Trust A and Trust B. Laura was also given the power of appointment over the remainder of Trust A after her lifetime. The remainder interest in Trust B was to be distributed after Laura's death pursuant to the following instruction:
(v) Upon the death of Settlor's wife, the Trustee shall pay from Trust B the sum of Twenty-Five Thousand Dollars ($25,000.00), but not more than one-sixth of the total then held in Trust A and Trust B after payment of all debts, expenses and taxes in the estate of the Settlor, to the Lutheran Church of the Good Shepherd, now located at 3700 Rutherford Street, Harrisburg, Pennsylvania, and a like amount to the Home for the Friendless, of Harrisburg, Pennsylvania, in each case for such use in carrying out the purposes of the organization as its governing body may from time to time determine, and the balance held in Trust B shall then be distributed equally among those of the following who survive Settlor's wife, Laura O. Passmore: . . . .
(R.R. at 9a). The trust agreement then went on to name ten (10) individual beneficiaries who would receive any balance left in Trust B. The Settlor died in March of 1975, and the Settlor's wife died in December of 1976.
In April of 1978, Hamilton Bank, as Trustee for the trusts, filed an account with a proposed schedule of distribution based upon the assumption that Settlor's wife had failed to properly exercise, in her will, her power of appointment over the remainder of Trust A.[1] Exceptions to that *587 account, filed by the executor of her estate and by the Church, were denied by the Orphans' Court of Dauphin County. An appeal was taken. Ultimately, the Pennsylvania Supreme Court determined that Settlor's wife had effectively exercised her power of appointment over Trust A.[2] Therefore, the Trustee was ordered to file a new account reflecting the decision of the Supreme Court.
In September of 1980, the Trustee filed a supplemental account and revised suggested schedule of distribution which reflected the distribution of Trust A to the Church and the Blind Association. In May of 1981, the Trustee filed a revised supplemental account and a further revised suggested schedule of distribution as to Trust B. On June 19, 1981, the Church filed objections to the further revised schedule of distribution. Basically, the Church objected to the Trustee's allocation of income earned during the period of administration. Under the proposed schedule, the Church was to get three percent (3%) of the income earned during administration through December 31, 1980, and five percent (5%) thereafter; the remaining income earned was to be distributed pro rata to the seven surviving individual beneficiaries. On January 5, 1983, the lower court dismissed the Church's objections and ordered that Trust B be distributed according to the further revised suggested schedule. The Church filed this timely appeal.
The Church raises one issue before us:
Does the supplemental account and further revised suggested schedule of distribution filed by the trustee below properly allocate to the beneficiaries of Trust B income earned during administration of the estate?
Brief for Appellant at 3.
The Church argues that the distribution of income is improper in that it is inequitable, is contrary to law, and misapplies 20 Pa.C.S. § 7187. The Church contends that it *588 is entitled to be paid the full amount of income which the principal allocable to it (the Church) has earned since approximately March of 1977. The Trustee, as appellee, argues that there was no misapplication of law and that the income was properly distributed.
Section 7187 of the Probate, Estates and Fiduciaries Code,[3] is the starting point in our analysis of this case. At the time this case began, section 7187 provided:
§ 7187. Interest or income on distributive shares
Except as otherwise provided by the trust instrument or by the provisions of section 3543 of this code (relating to interest or income on distributive shares):
(1) Pecuniary gift. When a sum of money is directed to be set aside at a specified time as a separate trust, it shall bear interest at the rate of 3% per annum from the date it was to be set aside until it is set aside. When a sum of money is directed to be paid outright, it shall bear interest at the rate of 3% per annum from three months after it became payable until it is paid.
(2) Specific gift. A donee of a gift of specific real or personal property directed to be distributed from a trust shall be entitled to the net income from property given to him accrued from the date it became distributable to him.
(3) Residuary gift. All income from real and personal property earned during the administration of a trust and not payable to others shall be distributed pro rata among the income beneficiaries of any continuing trust of a residuary share and other persons entitled to residuary shares of the trust.
In 1980, this section was amended to increase the rate of interest for a pecuniary gift from three percent (3%) to five percent (5%), beginning with interest accruing on or after January 1, 1981.[4]
*589 The entire appeal of the Church rests on whether the Settlor's transfer of money to the Church, as designated in Trust B, is a pecuniary gift or a residuary gift. Other than the language in the section itself, the Code does not directly define either term.
Under the terms of the agreement of trust, the Church and the Home for the Friendless are to receive from Trust B the sum of $25,000.00, but not more than one-sixth (1/6) of the total held in Trust A and Trust B after payment of all debts, expenses, and taxes. The balance of Trust B is then to be divided among the ten named relatives, seven of whom survived the Settlor's wife. Because Trust B did not contain enough money to give effect to the $25,000.00 gifts, we are concerned with gifts of one-sixth (1/6) of the total held in the trust.
The language of the agreement of trust directs the Trustee to pay from Trust B to the Church a certain "sum," subject to a limitation determined by considering the total assets of both trusts at the death of the Settlor's wife. 20 Pa.C.S. § 7187 defines a pecuniary gift as "a sum of money. . . directed to be set aside at a specified time. . . ." Because the agreement of trust directs the Trustee to pay to the Church a certain sum of money, and to pay it at a specified time, we agree with the lower court that this transfer is a pecuniary gift under the language of 20 Pa.C.S. § 7187.[5] It is further distinguishable from the residue because the word "balance," used in connection with the ten named individuals only, connotes a residuary gift. In re Thaw's Estate, 414 Pa. 347, 200 A.2d 290 (1964).
The Church argues that even if it is a pecuniary legatee rather than a residuary beneficiary, Section 7187 *590 was applied improperly. This argument centers around the fact that under the further revised schedule of distribution, no principal is allocated to any of the ten individual beneficiaries. Thus, the Church contends, they should not receive income accrued on principal either.
The Church was allocated $13,669.81 of principal (1/6 of the net assets of Trust A and Trust B).[6] Under the schedule of distribution, no principal was left to be allocated to the ten individual beneficiaries. The money those beneficiaries were to receive was made up entirely of allocated income. The further revised suggested schedule of distribution allocated $1,554.94 of income to the Church, and $1,577.03 of income to each of the seven surviving beneficiaries. (R.R. at 47a-48a). This amount was determined by taking the total interest earned in Trust B, $12,787.58, and applying 20 Pa.C.S. § 7187(1) to the Church's share, and giving one-seventh (1/7) of the balance to each individual beneficiary.[7]
We find no error in this method of distributing income. Section 7187(1) specifically provides that a pecuniary legatee shall receive five percent (three percent before January 1, 1981) interest on its gift. Section 7187(3) provides that all earned income not payable to others shall be distributed pro rata among those persons entitled to residuary shares of the trust. That is exactly what occurred in the instant case. As a pecuniary legatee, the Church is entitled to the statutory interest provided by 20 Pa.C.S. § 7187(1), not a proportionate share of the income earned. Any income earned beyond that amount given to the Church is to be distributed pro rata to the seven named residuary beneficiaries. *591 The fact that these individuals were not fortunate enough to receive any distribution of principal does not mean that their interests in the income are extinguished. They are still remaindermen entitled to share any residue.
Nor do we find that Section 7187(1) is inequitable and contrary to public policy, as the Church suggests. The Legislature, by enactment of Section 7187, has provided us with a statutory rate for pecuniary legatees. Clearly, the legislative intent was to give the beneficiary of a pecuniary gift under a trust a fixed rate of return from a fixed date, and either to impose on the residuary beneficiaries any deficiency if the underlying assets earn income at a lower rate, or to give the residuary beneficiaries the benefit of any excess earnings. Section 7187 applies to trusts the same rules that are applicable to interest or income from estates. See 20 Pa.C.S. § 3543. Further, the Legislature has recognized the increase in interest rates by amending Section 7187 in 1980 to provide for a higher rate.
We agree with the Trustee that any equitable considerations favor the seven remaining remaindermen. Upon a reading of the trust as a whole, we can see that the Settlor gave the highest preference to his wife, to whom he gave life estates in both Trust A and Trust B. Next in preference seems to be his assorted relatives (the remaindermen), who would have received two-thirds (2/3) of all trust assets had the Settlor's wife preceded the Settlor in death. However, these relatives have received virtually nothing. They get nothing from Trust A because the Settlor's wife appointed it away from them (and to the Church), and they receive no Trust B principal at this time because the small amount they could possibly receive has been awarded to the Trustee pending final determination of taxes.
Finding no error in the determination of President Judge Lee F. Swope dismissing the Church's objections to the further revised suggested schedule of distribution, we affirm.
Order affirmed.
NOTES
[1] Laura Passmore's will established a trust to pay her surviving sister the income and principal as needed for life, and to pay the residue (to be a minimum of $10,000) to The Evangelical Lutheran Church of the Good Shepherd (75%) and to the Blind Association of Harrisburg (25%).
[2] In re Passmore, 490 Pa. 391, 416 A.2d 991 (1980).
[3] Act of June 30, 1972, P.L. 508, No. 164, § 2; 20 Pa.C.S. § 101 et seq.
[4] Act of June 30, 1972, P.L. 508, No. 164, § 2, as amended Act of July 11, 1980, P.L. 565, No. 118, § 11; 20 Pa.C.S. § 7187.
[5] We realize that the "1/6 of the total held in the trusts" is a formula clause and formula clauses are usually divided into two classes: those creating a gift in a pecuniary amount and those giving a fractional share of the residue. In re Althouse's Estate, 404 Pa. 412, 172 A.2d 146 (1961). We find that the clause in the instant case belongs to the first category for two reasons. The formula limit is a fraction of the total of both Trust A and Trust B, not just Trust B. Further, it is merely a formula for determining the limit on the amount of the pecuniary sum, which the Settlor intended to be $25,000.00.
[6] The value of Trusts A and B at the time of the proposed schedule of distribution, before advance distributions and other expenses was listed as $66,639.99 principal and $21,730.16 interest in Trust A and $38,960.28 principal and $12,787.58 interest in Trust B. (R.R. at 37a and 44a). It appears that the $13,669.81 figure derives from the total principal in Trust B of $38,960.28, less $11,620.66 awarded to the Trustee for further administration (which no one appealed), divided by two.
[7] The Home for the Friendless, the other pecuniary legatee of Trust B, waived its share of the interest.