506 A.2d 398

**In re ESTATE OF Robert P. FIKE, Deceased.**

**Appeal of Marlene Fike DUNN.**

Superior Court of Pennsylvania.

Argued May 14, 1985.

Filed Jan. 31, 1986.

Reargument Denied April 3, 1986.

382

[redacted]

Harry Polikoff, Philadelphia, for appellee.

Before SPAETH, President Judge, and ROWLEY and WIEAND, JJ.

## OPINION OF THE COURT

ROWLEY, Judge:

Robert P. Fike, the decedent, died on January 21, 1978. He was survived by his widow, Ruth N. Fike, and his daughter, Marlene Fike Dunn (Appellant). Mrs. Dunn is the decedent's daughter by a prior marriage.

In his will, executed in 1973, decedent, after leaving his tangible personal property to his widow, established a marital trust, designated as Fund A, for his wife's welfare and comfortable support. The residue of his estate he left in trust, designated as Fund B, to be divided into two separate equal trusts, one for his widow and one for his daughter. The decedent designated his widow and Gallatin National Bank as co-trustees of the trusts established by his will and appointed his brother, Louis S. Fike, Executor of his estate.

■ In March, 1982, the Executor filed his second and partial account, together with a schedule of proposed distribution. Objections were filed by decedent's daughter, Mrs. Dunn. On July 14, 1983, the trial court filed an adjudication and decree nisi disposing of the objections. Mrs. Dunn then filed exceptions to the trial court's adjudication and decree nisi. On April 30, 1984, the trial court filed an opinion and "final decree" disposing of Mrs. Dunn's excep-

tions. Mrs. Dunn's appeal from the trial court's "final decree" is now before us for disposition.[1] In considering appellant's arguments, we note that it is a cardinal rule in the construction of a will that the intention of the testator shall govern, whenever that intention is clearly manifested, and is not in conflict with established principles of law. *Thompson's Estate*, 229 Pa. 542, 79 A. 173 (1911). Additionally, we note that our scope of review on appeal from a decree entered by the Orphans' Court is extremely limited; we will modify a decree only if it is not supported by competent or adequate evidence, if an error of law has been committed, or if the trial court abused its discretion. *Fulkroad v. Ofak*, 317 Pa.Super. 200, 463 A.2d 1155 (1983). With these polestars before us, we turn to the arguments advanced by the parties.

## I.

Appellant's first claim is that the Executor's proposed distribution, approved by the trial court, will result in an over-funding of the marital trust. She advances two arguments in support of this claim.

## A.

According to the inventory and appraisement as filed by the Executor, the decedent's personal and real estate were valued at $1,584,580.91. The principal asset of the estate was a "purchase money promissory note" dated January 20, 1978 (the day preceding decedent's death) from Pyah Industries, Inc. [hereinafter Pyah] on which the balance due was listed as $1,327,181.00. In addition to the note, the Executor listed as an asset of the estate a certified check from Pyah to the decedent in the amount of $182,500.00.

1. No appellate brief has been filed or appearance entered on behalf of decedent's widow, Ruth N. Fike. The Executor, Louis S. Fike, died on July 14, 1983. The Executors of Louis' Estate, Evelyn R. Fike and Pittsburgh National Bank, caused an appellate brief to be filed and oral argument to be presented "for the Estate of [decedent] Robert P. Fike".

According to the account, the estate assets had appreciated in the amount of $188,805.62 from the date of decedent's death to the date the account was stated. The Executor proposed distributing 58.4938% of the appreciation, that is, $110,439.58 to the marital trust (Fund A) and the balance of the appreciation, being 41.5062% or $78,366.04, to the residuary trust known as Fund B. Appellant's first argument is that the trial court erred in approving the distribution of *any* portion of the *appreciation* of the estate assets to the marital trust. She contends that Fund B is entitled to the entire increase in value.

The decedent established the marital trust in paragraph "THIRD" of his will which reads as follows:

THIRD: If my wife, RUTH N. FIKE, survives me, I give to my wife and GALLATIN NATIONAL BANK, to hold IN TRUST as

## FUND A

a portion of my estate having a value equal to one-half (½) of the value of my adjusted gross estate as finally determined for Federal estate tax purposes, less the value for such purpose of all items in my gross estate, passing to my wife otherwise than under this Article of my Will and qualifying for the marital deduction and less any proceeds of insurance on my life received by the Trustees and allocated to this Fund A. *My Executor shall allocate assets to this portion in kind at its value as finally determined for Federal estate tax purposes in my estate, but shall so select them that the total property, including cash, allocated to Fund A will have an aggregate market value fairly representative of the net appreciation or depreciation, to the date or dates of distribution, in the market value of all property available for such purpose. There shall be excluded from the portion of any property or the proceeds of any property which does not qualify for the marital deduction or as to which a foreign death tax credit is available or which is considered income in respect of a*

*decedent.* If my wife and I die under such circumstances that there is no sufficient evidence that we have died otherwise than simultaneously, it shall be conclusively presumed that she survived me. [Emphasis added.]

The parties agree that the marital trust share calculated in accordance with the first sentence of paragraph "THIRD" and prior to any allowance for appreciation is $706,204.99. Appellant argues that the formula utilized by the decedent in establishing the marital trust constituted a *pecuniary* bequest and is not a *fractional share* formula.[2] It is argued that since the formula utilized was a pecuniary bequest "the amount distributed to the Trustee *at the date of distribution* must be $706,204.99 including the values of any assets in kind at the date of distribution." (Emphasis added.) She argues that the decedent did not intend that the marital trust would receive, at the date of distribution, assets having a total aggregate value in excess of $706,-204.99.

Appellant, in support of her argument, quotes from the discussion contained in the July, 1983 issue of "Estate Planning Studies" (Merrill Anderson Company, Inc., West Port, Ct.). Appellant quotes a portion of the discussion which points out that under the "date of distribution value" pecuniary formula the marital trust "won't benefit from asset appreciation, but won't suffer from depreciation."

**2.** Marital deduction formulas usually occur in one of two forms: either as a "pecuniary" or a "fractional" bequest. Neither party in this matter asserts that the will establishes a fractional formula. We will, therefore, forego a discussion of that term. Pecuniary formula bequests entitle a surviving spouse to an amount of property specified in dollars. But rather than forcing the testator to set the value of the marital trust at a specific amount—a difficult task, considering that the testator's estate may increase or decrease between the time the will is drafted and the time he dies, rendering the figure chosen wholly inappropriate—the pecuniary formula determines the dollar amount at the time of the testator's death. There are at least three (3) forms a pecuniary formula may take however. *See Estate Planning Studies,* July, 1983 (Merrill Anderson Company, Inc., West Port, Ct.) See also, generally A. James Casner, *Estate Planning* (4th Ed.,1980), W.J. Casey, *Estate Planning Desk Book* (Institute for Business Planning, 2d Ed., 1969), and 1 Fed.Est. & Gift Tax Rep. (CCH) ¶ 7535.48 (1983).

However, the authors of the article have made it clear that there are currently at least three different types of pecuniary formulas available to the testator seeking to establish a marital trust. In addition to the "date of distribution value" pecuniary formula, there is a "minimum worth pecuniary formula" and what is known or referred to as a "64—19" pecuniary formula. It is obvious that it is the latter formula that was utilized by the testator in this case. The author of the study, in explaining the "64—19" formula, stated that "assets allocated to the marital trust must be 'fairly representative' of the appreciation or depreciation of the assets available for funding." The author goes on to state that "all assets must be revalued as distributions are made to assure participation of the marital share in value appreciation or depreciation."

Appellant also relies on the decision of the Supreme Court of Pennsylvania in *Althouse Estate*, 404 Pa. 412, 172 A.2d 146 (1961). In *Althouse*, the Supreme Court had before it an issue very similar to the one before us in this case. In *Althouse*, the beneficiary of the residuary trust contended that the will provision which created the marital trust was in the nature of a pecuniary gift in which case the increased value of the estate assets would be distributed in their entirety to the residuary trust. The appellees, on the other hand, contended that the testator had, in establishing the marital trust, made a gift of a fractional portion of his entire estate and therefore it was entitled to share in the appreciation of estate assets. The Court concluded that the formula utilized by the testator in that case was a pecuniary gift and that the marital trust was therefore not entitled to any portion of the increase in value. We find, however, that the decision in *Althouse* is distinguishable. Initally, the Supreme Court made it clear that it was not establishing a mechanical solution to the issue presented. The Court emphasized that the controlling factor in that case, as well as in all such cases, was the general rule that the testator's intent, if not unlawful, is to prevail. The Court said *"[w]e believe that the testator was clearly attempting and in-*

*tending* to take full advantage of the maximum marital deduction and to give all such (presently) tax exempt property to his trust for his wife known as Trust A; .... *We are convinced that this was his dominant intent.* " It is the expression of intent contained in Mr. Fike's will that distinguishes this case from *Althouse*. Here, as noted, the testator specifically directed that assets should be allocated to the marital trust so that they would "have an aggregate market value fairly representative of the net appreciation or depreciation, to the date or dates of distribution, in the market value of all property available for such purpose." There is no such provision, or anything remotely resembling it, contained in the will being construed in *Althouse's Estate*. Finally, it is to be noted that *Althouse* was decided in 1961, more than twenty-four years ago. The Court, at that time, recognized the perplexities inherent in the attempt to obtain the maximum allowable deduction, as well as the reality of constant revision, being undertaken by practitioners to achieve the desired goals. Since then, as already noted, at least three types of pecuniary formulas have come to be recognized and given effect. One of those, as utilized in Mr. Fike's will, provides for a sharing by the marital trust of an appreciation (or depreciation) in the value of the estate's assets. Therefore, the decision in *Althouse* is not contrary to our decision in this case and does not mandate a different result in light of the express provisions in Mr. Fike's will.

The trial court, in concluding that the marital trust was entitled to a share of the appreciation of the estate assets, relied on the second sentence of paragraph third and concluded that the decedent's intent was clear and "whatever Fund A is technically termed, it is to share in any appreciation of assets used as property in kind. The argument as to the nature of the formula for funding the trust is a battle over semantics. The real issue is the testator's intent and the will language is clear that properties used to establish Fund A are to be representative of any net appreciation or depreciation." With this conclusion, we agree. It is diffi-

cult to imagine a clearer statement of the decedent's intent than the direction to his Executor that the assets allocated to the marital trust shall "have an aggregate market value *fairly representative* of the net appreciation or depreciation, to the date or dates of distribution, in the market value of all property available for such purpose." (Emphasis added.)

## B.

■ The appellant also argues that the Executor overfunded the marital trust by distributing to it proceeds of the Pyah note. The parties agree that any capital gain on the Pyah note constitutes "income in respect of a decedent" as that phrase is defined in the Internal Revenue Code. Appellant argues that, in addition to the capital gain, interest paid to the estate on the Pyah note is likewise income in respect of a decedent. Appellant argues that the testator, by the third sentence in paragraph third of his will, excluded from the marital trust all income in respect of a decedent. This argument was not addressed by the trial court. Counsel for the Executor argues that the clause excluding income in respect of a decedent is inapplicable because, under the circumstances in this case, it is contrary to the clearly expressed intent of the testator.

Initially, we note that the sentence as contained in decedent's will appears to be incomplete. It appears that there is a word or phrase omitted from the sentence either after the words "excluded from" or after the words "portion of". The parties appear to recognize that the sentence is incomplete because they would insert the word "marital" immediately preceding the word "portion". Careful examination of the sentence indicates that three types of property are to be excluded from some unspecified or undesignated subject matter. They are: (1) property which does not qualify for the marital deduction, (2) property as to which a foreign death tax credit is available, or (3) property which is considered income in respect of a decedent. The will, as executed by the testator, does not state from *what* the

three types of property or proceeds of property are to be excluded.

Secondly, it is critical to bear in mind that in construing the will we are to attempt to carry out, insofar as possible, the testator's intent. In reviewing this will, in its entirety, two goals clearly emerge. First, the decedent intended to provide for his wife's health, comfortable support, maintenance and welfare. This was his primary objective. After awarding his widow his tangible personal property, the decedent, in a separate paragraph, established the marital trust for his wife. He also named her as a beneficiary of one-half (½) of his residuary trust. Thus, his concern that his widow be *well* cared for cannot be disputed.

The other goal that is clear in reading the will is that the testator desired, insofar as it could be done consistently with his first goal, to minimize his death taxes. The provision for a marital trust in itself is evidence of that. In addition, in paragraph seventh, he specifically directed his Executor to take such action as was necessary to achieve an overall reduction in the income and death taxes. Both of these goals, particularly the first, would be frustrated if appellant's interpretation of the will were to be adopted and income in respect of a decedent were excluded from the marital trust.

Obviously, the proceeds of the Pyah note are the bulk of the decedent's estate. The note represented the sale price of the decedent's one-half (½) interest in the Fike Dairy Corporation, which he owned with his brother Louis. The sale of the decedent's interest took place the day preceding his death. By that sale and his death the following day, his interest in the dairy farm was converted from a principal investment into income in respect of a decedent. The transformation occurred some four to five years after decedent's will was executed.

Under appellant's interpretation of the will, the proceeds of the Pyah note would necessarily be excluded from the marital trust and would, consequently, virtually eliminate the trust in its entirety. As already pointed out, the total

estate according to the inventory and appraisement was slightly in excess of $1,584,000.00. According to appellant's calculations, the principal amount of the note that would qualify as income in respect of a decedent is in excess of $1,300,000.00. Yet the parties agree that the value of the marital trust to be funded, according to the formula established in decedent's will, is in excess of $706,000.00. Therefore, in view of the fact that the third sentence, as construed by appellant is itself ambiguous, that the transformation of the decedent's principal asset occurred the day preceding his death, that his will containing the sentence was executed some four to five years earlier, that appellant's interpretation of the will would have a disastrous effect on the marital trust, and that decedent clearly expressed his intent to provide for his wife's care and comfort, we hold that the trial court did not err in approving the Executor's proposed distribution to Fund A.

## II.

■ Next, appellant argues that the trial court erred in apportioning the income earned during the administration of the estate between decedent's widow, as beneficiary of the marital trust (Fund A), and the beneficiaries of the residuary trust (Fund B). Appellant contends, based on 20 Pa.C.S. § 3543(a) that Mrs. Fike, as beneficiary of the marital trust, is only entitled to interest at the rate of 3% per annum on the amount to be distributed to the marital trust rather than a proportionate share of the total income earned by the estate. Appellant further argues that pursuant to 20 Pa.C.S. § 3543(d) the income earned from the estate during its administration is payable in its entirety to the income beneficiaries of the trusts created in the residuary estate. The Executor, however, argues that subsections (a) and (d) of § 3543 are subject to the provision in subsection (g) and thus to any contrary provisions of decedent's will. He contends that in paragraph six of the will the testator gave his Executor "the same broad powers ... as are granted to my trustees", and that those powers

include the direction to pay the income on both the marital and residuary trusts to the beneficiaries. However, this argument disregards the language in paragraph six that specifically designates the broad powers as being those "of retention, sale, conversion, investment and management" of the decedent's estate.

The trial court in ruling on this issue concluded, however, that the testator's intent was to provide comfortably for his widow "whether the proceeds be from the marital trust or from income earned during the administration of the estate." While we agree that that was decedent's intent, we do not agree that his will contains any provision that is contrary to § 3543(a) and (d).

Recently a panel of this Court was required, under similar circumstances, to apply the same rules relating to trusts that are applicable to decedents' estates in § 3543. *Matter of Trust B under Charles F. Passmore,* 332 Pa.Super. 584, 481 A.2d 943 (1984). In *Passmore,* the appellant, a beneficiary under Trust B claimed that it was entitled to a pro rata share of the income earned during the trust administration rather than a fixed percentage of interest at the rate of 3% and 5%. However, this Court, after carefully reviewing the agreement of trust, concluded that the gift in Trust B to the appellant was a "pecuniary gift" and therefore the appellant was only entitled to the fixed rate of interest rather than a pro rata share of the income earned.

There are, naturally, differences between the trust agreement in *Passmore* and the will in this case. However, we do not find them to be substantial or controlling. The parties here agree that the marital trust was established pursuant to a "pecuniary" formula. Furthermore, there is no clear expression or indication in the will that the testator intended a result contrary to subsections (a) and (d) of § 3543. Therefore, we conclude that the trial court erred in approving the allocation of a pro rata share of income earned during the administration of the estate to the widow as beneficiary of the marital trust.

## III.

■ Appellant's final issue concerns the distribution of income and principal allocated to the residuary trust, Fund B, between herself and decedent's widow. The residuary trust, designated as Fund B, is to be divided into separate equal trusts, one for the appellant and one for decedent's widow. However, it is conceded now that the payments to the two beneficiaries under Fund B have not been equal. The widow has received a sum in excess of that paid to the appellant. About that there is no dispute and it is conceded that the payments must be equalized. However, the trial court ordered that interest at the rate of 6% be paid on the amount appellant is to receive in order to achieve an equal distribution. Appellant argues, however, that rather than interest at the rate of 6%, she should be paid interest on the amount due "at the prevailing rates between the dates such payments should have been made ... and the dates they were actually made...." The Executor argues that this issue is moot "since the Executor awarded to [appellant] the share of all income earned, not merely 6%." However, this contention misconceives appellant's argument as we understand it. Appellant's argument is that she is entitled to damages in the nature of interest for the delayed payment of principal and income due her from the residuary trust. This is what we understand the trial court's order to provide for. Since appellant has cited no authority for her proposition that she is entitled to interest at the prevailing rate rather than at the rate of 6% per annum for delay in payment and there is no evidence in the record of what the "prevailing rate" was at the times in question, we find that the trial court did not err in awarding interest for the delay in payment at the rate of 6% per annum.

Order vacated. Case remanded to the trial court for further proceedings in accordance with the foregoing opinion.

Jurisdiction relinquished.

This case was decided prior to the expiration of former President Judge SPAETH's term of office.